## Waas v. Ashland Day and Night Bank.

(Decided December 21, 1923.)

### Appeal from Boyd Circuit Court.

1. Negligence—Injury Must be One that Might have been Reasonably Foreseen.—To fix liability on a person for remote negligence, or other wrongful acts, the injury complained of must be one that under all the circumstances might have been reasonably foreseen or anticipated by a person of ordinary prudence to flow from or be the natural and the probable consequence of the wrongful act.
2. Negligence—Self-Inflicted Injury During Insanity Resulting from False Charge and Threatened Prosecution Not Actionable.—One who falsely charges another with an offense and threatens him with imprisonment, cannot be held to have foreseen and is not liable for self-inflicted injuries resulting from insanity caused by the false charges and malicious threats, even though the injured person was known to be peculiarly susceptible to fear.

MARTIN & SMITH and WAUGH & HOWERTON for appellant.

JOHN W. WOODS and HAGER & STEWART for appellee.

OPINION OF THE COURT BY TURNER, COMMISSIONER—Affirming.

Appellant filed his action for damages. The trial court sustained a demurrer to his petition, and the correctness of that ruling is the only question involved.

It is alleged that on the 7th of December, 1920, a "run" was in progress on the appellee bank, and its depositors were in large numbers withdrawing their money therefrom; that on that day while the run was in progress and the depositors were withdrawing their money, Elam, the cashier of the institution, who was also a stockholder and director therein, summoned plaintiff to come to the bank; that plaintiff went to the bank and Elam then and there wrongfully, falsely and maliciously, and without reasonable or probable cause, and with the intent to frighten and terrify plaintiff, charged him with the commission of the crime of unlawfully and maliciously circulating a false statement concerning the financial condition of the bank, and then and there falsely, wrongfully and maliciously accused plaintiff of having committed such crime, which was the cause of the "run" on the bank; that Elam acting in such capacity used wicked and scandalizing language to the plaintiff and threatened to have him arrested and sent to the penitentiary and incarcerated therein; that plaintiff then and there protested his innocence of the charge, and offered to do anything Elam might suggest to show that plaintiff had confidence in the bank, and to prove his innocence of the charge; that plaintiff as a result of the false charge and the threats of Elam became terrified and frightened, and Elam then and there knew that plaintiff was frightened and terrified, and that plaintiff could not withstand as much threatening as ordinary persons, but notwithstanding such knowledge he directed the plaintiff to go away and come back to the bank again in one hour; that plaintiff left the bank in a terrified and frightened condition and believing that the bank and Elam had the authority to send him to the penitentiary, and the threats weighed upon his mind during the hour he waited; that he then returned to the bank as agreed, at which time Elam again wrongfully and falsely accused the plaintiff of the crime and used abusive and scandalizing language to him, and again threatened to have him imprisoned in the penitentiary, although plaintiff at the time again protested his innocence and asked Elam to let him go without further terror, annoyance and accusation, and Elam again accused plaintiff of the commission of the crime, and threatened to have him arrested and placed in the penitentiary; that Elam knew at all these times that plaintiff was not a person of strong mind, and that he

was peculiarly susceptible to fear; that plaintiff was possessed of a highly sensitive and temperamental nature, and was of an extremely nervous disposition by reason of which he was peculiarly susceptible to fear and threats, and that Elam knew or should have known by the exercise of ordinary care from the acts and conduct of the plaintiff, as manifested on the occasions referred to, that plaintiff was peculiarly susceptible to fear and threats and could not withstand as much threatening as ordinary persons, and notwithstanding such knowledge Elam continued to threaten plaintiff with criminal prosecution and to send him to the penitentiary, all without probable cause and with intent to intimidate, terrify, frighten and injure plaintiff.

The plaintiff then alleges that when he left the bank the second time the language, acts, conduct, threats and accusations so made by Elam weighed upon his mind to such extent that he became insane, and he did not know or remember anything that happened after he left the bank until long after the infliction of the injuries hereinafter referred to. He then alleges that immediately after he left the bank in an insane condition, and when he did not know what he was doing, he procured a pistol and went to his home and shot himself through the head, as a result of which his optic nerves were destroyed and he was caused to be totally and permanently blind, and that because of which he suffered great physical pain and mental anguish, and his power to earn money was totally destroyed; that when he procured the pistol and shot himself in an effort to take his life his mind was deranged and unbalanced, and he did not know what he was doing and was insane for the time mentioned, and did not have mind enough to know or appreciate the nature and quality of his act, or that same would result in injury to himself. That his said injuries were received as a direct and proximate result of the false accusations and scandalizing language and threats used by Elam as cashier, agent and servant of the bank, which accusations and threats caused the plaintiff to become insane, which Elam well knew at the time of the accusations and threats.

In other words, it is alleged that the physicial injuries from which the plaintiff suffered were inflicted by himself as a result of a temporary mental condition alleged to have been produced by the false and malicious

charges and threats uttered by Elam—that is, between the false and malicious accusations and threats there intervened a mental condition in the plaintiff which caused him to inflict upon himself the physical injuries for which he sues.

The question of proximate cause has arisen in unnumbered cases, and particularly has it received consideration by the courts in the last generation or two, when by reason of modern industrial conditions there has been such an increase in damage suits. Many of the courts have undertaken in one way and another to define proximate cause, but most of them have despaired of giving any comprehensive definition because the question has arisen in so many different ways and under so many different circumstances and conditions that it appeared to be impracticable, and they have chiefly contented themselves with determining under the facts and conditions of each case whether the proximate cause existed.

With few exceptions the question has arisen under facts showing physical injuries from one cause or another, and only in a few isolated cases have the courts been called upon to determine whether proximate cause existed where the original negligent or wrongful act was followed by mental aberration or an unsound condition of mind which caused the plaintiff while in that condition to inflict injury upon himself.

It is at the outset apparent that such an inquiry involves an excursion into the realm of psychological research and inquiry into the mental processes caused in the mind of one by reason of a given state of facts. In ordinary physical injuries the inquiry only involves the relation of one physical thing to another, and the determination of the question whether there is a natural and logical sequence following from one to the other. But when it becomes necessary to delve into the secret processes of men's brains in order to find the relationship of one precedent act to another subsequent act, so as to establish the relationship of cause and effect between the first and last, it would appear to be wholly impracticable in the administration of a practical science like the law.

Although many definitions have been given, and many courts have declined to give any, there is one thing about which there appears to be practical unanimity, and that

rule is admirably stated by this court in the case of Snydor v. Arnold, 122 Ky. 557, as follows:

"The weight of authority seems to be against holding a defendant liable for all the consequences of his wrongful acts when they are such as no human being even with fullest knowledge of the circumstances would have considered likely to occur, and the rule is well settled that to fix liability upon a person for remote negligence the injury complained of must be one that under all the circumstances might have been reasonably foreseen or anticipated by a person of ordinary prudence to flow from or be the natural and probable consequence of the first negligent or wrongful act."

It will be observed that the rule thus laid down is sufficiently comprehensive to embrace not merely negligent acts but wrongful acts as well, and we doubt not that a wanton or malicious act is and should be embraced by this rule as well as merely a negligent act. While it is true that a distinction has been made in some courts in applying the doctrine of proximate cause in the two different classes of cases, no such distinction appears to have been recognized in this state.

Men are presumed to have in mind when they are guilty of negligence, or when they are guilty of wrongful acts maliciously and wantonly committed, only the reasonably fair and ordinary consequences of their conduct, and the law ordinarily holds them responsible only to the extent that a reasonable man could contemplate the logical and natural consequences of his act, and not for the remote, unexpected and unusual results brought about by a chain of circumstances unforeseen, unexpected and which no reasonable man could have naturally looked for.

In the light of this logical and practical rule can it be said with any degree of reason or fairness that one who falsely charges another with the commission of an offense, and maliciously and wantonly threatens him with imprisonment therefor, could possibly have had in mind at the time that such false accusation and malicious threat would result in producing insanity in the person so charged and threatened? Is it the common experience of men that an average man so charged and threatened would become insane, or that if he did his insanity would take the form of self-destruction? Would any man even though he be actuated by malice, and even

though he knew the person charged was peculiarly susceptible to fear, contemplate or have in mind that his false charge, or his malicious threat, would produce insanity in such person, or cause him to commit suicide?"

Men are responsible only for the natural, logical and reasonable consequences of their acts, and not for remote, unexpected and undreamed of consequences whch mght grow out of a subsequent chain of events.

In the case of Scheffer v. Railroad Co., 305 U. S. 249, it was charged that Scheffer was injured, wounded and disfigured in a railroad accident, and as a result thereof was sick, sore, lame and disordered in mind, in body and in brain and spine, and as a result thereof had illusions and forebodings of unendurable evils, and that some months thereafter while in that condition he took his life, and the action was instituted against the railroad company for his death under the statutes of Virginia. The Supreme Court (Justice Miller) in discussing the question of proximate and remote causes, said:

"It is admitted that the rule is difficult. But it is generally held that, in order to warrant a finding that negligence or an act not amounting to wanton wrong is the proximate cause of an injury, it must appear that the injury was the natural and probable consequence of the negligence or wrongful act, and that it ought to have been foreseen in the light of the attending circumstances. To the same effect is the language of the court in McDonald v. Snelling, 14 Allen (Mass.) 290.

"Bringing the case before us to the test of these principles, it presents no difficulty. The proximate cause of the death of Scheffer was his own act of self-destruction. It was within the rule in both these cases a new cause, and a sufficient cause of death.

"The argument is not sound which seeks to trace this immediate cause of the death through the period of mental aberration, physical suffering, and eight months' disease and medical treatment to the original accident on the railroad. Such a course of possible or even logical argument would lead back to that 'great first cause least understood,' in which the train of all causation ends.

"The suicide of Scheffer was not a result naturally and reasonably to be expected from the injury received on the train. It was not the natural and probable consequence, and could not have been foreseen in the light

of the circumstances attending the negligence of the officers in charge of the train.

"His insanity, as a cause of his final destruction, was as little the natural or probable result of the negligence of the railway officials, as his suicide, and each of these are casual or unexpected causes, intervening between the act which injured him, and his death."

In the case of Stevens v. Steadman, 140 Ga. 680, 47 L. R. A. (N. S.) 1009, Steadman, who is alleged to have been of a very nervous and excitable temperament, and easily depressed by unjust criticism, was notified in writing by some of his fellow employes and officers in a firm or corporation that he must resign his position immediately and without inquiry into the reasons, because it would be best for him and his family and best for the firm or corporation, and no further reason was given. Thereafter owing to his nervous temperament and condition, which was well known to defendants, he was caused to become unbalanced and his reason to be dethroned, and while in that condition he committed suicide. In an action by his widow against the persons signing and sending the letter the trial court overruled the demurrer to the petition and the supreme court of Georgia reversed that judgment, and in so doing said:

"But we do not think it can be said that any one could know that the effect of a letter containing a request for the person to whom it was addressed to resign from a certain position, and advising him to make no inquiry as to the reasons for the demand, would be to cause him to adopt any particular line of conduct, whether the person receiving the letter was sane or insane. If the defendants in this case were guilty of the tortious homicide of the decedent, they were guilty of murder, because the homicide was committed with the circumstances all indicating malice aforethought. But does any one believe for an instant that the defendants should be held to be guilty of murder under the statutes of Georgia, under the facts alleged in this petition, as in the case of one who aids and abets and counsels a suicide, where suicide upon the part of the one advised and counseled follows?"

In addition to the two cases above quoted from, we find in 23 A. L. R. at page 1262, (278 Fed. 92) an able and elaborate discussion of a case somewhat similar to this, but where the facts were much more aggravated.

The personal representative of Salsedo brought an action for damages against Palmer, et al., wherein it was alleged that defendants lawlessly and wrongfully arrested and seized the body of Salsedo and held him in confinement and captivity and without process of law and against his will; that they assaulted him and inflicted upon him blows and grievous bodily injuries; that they subjected him, against his will, to repeated interrogations and inquisitions, and that during his period of confinement the defendants tortured him mentally by threatening to inflict upon him grievous physical injury and death, and to cause his prosecution, conviction and imprisonment for crime of which he was innocent; and that they made and broke repeated promises to set him free; that they caused him to believe, and he did believe, they had the power and ability to inflict upon him the wrongs with which they threatened him, and they caused him to live and be in constant fear, and that by said tortures of defendants Salsedo was caused to lose control of his mind and will, and to become suicidally despondent and mentally irresponsible with the result that he killed himself.

A demurrer was sustained to the petition in the trial court, and the United States Circuit Court of Appeals in affirming that judgment went into a lengthy and exhaustive discussion of the few authorities on the subject, and affirmed the judgment of the lower court. After examination of all the authorities on the subject, including the two from which we have quoted, and quoting from Addison on Torts, Pollock on Torts and Cooley on Torts, the court, in reaching the conclusion that the plaintiff could not maintain the action, said:

"We think it unnecessary to examine into the cases further. In our opinion the allegations of the complaint are insufficient to sustain a cause of action against the defendants for causing the death of the unfortunate decedent. His death was not the natural or probable consequence of what the defendants are alleged to have done, and the connection between the defendant's original acts and the final result was too remote.

"If the deceased, his mind having become unbalanced because of the treatment to which the defendants subjected him, had escaped from his confinement, and, being unable to appreciate the wrongfulness of his act, had killed the first man he met, could it be said that the death was due to the acts of the defendants? We feel certain

that no liability would attach to them under such circumstances. And we feel equally certain that in taking his own life, instead of that of another, the responsibility of defendants is no different.''

There is also appended to that case an instructive note.

Without going further into the authorities, and without further discussion we are of opinion that the plaintiff's petition affirmatively shows on its face that his injuries were not caused by the wrongful acts of defendant.

Judgment affirmed. Whole court sitting.