# Ray's Adm'r v. Standard Oil Co.

(Decided June 23, 1933.)

HENSON & TAYLOR for appellant.

PENTECOST & DORSEY, CHARLES G. MIDDLETON, CRAW-FORD MIDDLETON, MILNER & SEELBACH for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

On November 3, 1930, and prior thereto, there was conducted in common school district H in Henderson county a colored school known as Race Creek school. At that time and for some years prior thereto the employed teacher of the school was and had been T. I. Bryant, a colored man beyond middle age but whose exact age is not shown. Shortly after the convening of school on the day mentioned a fire was started in the manner hereinafter described, and which destroyed the building and burned three of the pupils to such extent as to produce their deaths, shortly thereafter. One of them was Albert Ray, who was seven or eight years of age, and the appellant and plaintiff below, Henderson National Bank, qualified as administrator of his estate, and then filed this action in the Henderson circuit court against the defendant and appellee, Standard Oil Company, to recover damages for his death, which plaintiff alleged was produced by defendant's negligence in the manner therein and hereinafter outlined. The burned building was not the property of the county board of education as a part of the public school system of the county, but was only a rented one, the public one having burned some year or so earlier and while the same teacher was conducting the school. After that fire the board of education arranged with a colored church organization nearby to rent the small building that it had constructed near its church building for church entertainment purposes, and in which the school was thereafter taught.

Some time prior to the fire on November 3d, the county board of education entered into a written contract with defendant to furnish floor oil to the various county school buildings needing it, at stipulated prices. The teacher of the school in question had requested the county board of education to procure and furnish for his school five gallons of floor oil, and it immediately notified defendant to deliver that quantity to that school house at its convenience. From some cause, not entirely made clear, there was no school taught in the building on Friday, October 31, 1930, preceding the fire, and the building was supposed to remain fastened from that time until the following Monday morning when the fire occurred. Defendant then had in its employ, and who had been so for a number of years, Monroe Cheaney, a driver of one of its truck oil tanks with which it

filled its orders and delivered its product to its customers within the territory assigned to Cheaney, and which included the Race Creek Colored school. Some time during the day of Friday, October 31, 1930, Cheaney went to the school house for the purpose of filling the order, and, as we gather, he was under the impression that school was being conducted on that day, but when he arrived he found the front door locked. He went to the front one of the two side windows and raised the sash, when he saw sitting on the floor of the building, between the door and its corner on that side, a five gallon tin can. He then entered the building and discovered on taking hold of the can that it was empty. The lock on the door was a spring one, and could be opened from the inside, and Cheaney thereupon opened it and carried the can to his truck and filled it with five gallons of floor oil and then deposited it at the place where he found it and went away. At that time he made out a delivery slip bearing that date, which he later on the same day delivered to his employer, the defendant. The above is, in substance, his testimony and he also stated that he neither saw nor in any manner handled any tea kettle in the building. However, the teacher, and other witnesses testifying in the case, established the fact that there were two tea kettles in the building, one of which was useless because of a hole in it and the other one was, during school sessions, kept filled with water and resting on the top of the stove for the purpose of moistening the atmosphere, and the teacher testified that he always filled it with water each morning and placed it on top of the stove and that the water in it would about all evaporate during the day, leaving it empty at the time of the closing of the school, to be refilled the next morning.

The teacher also testified that when he dismissed school on Thursday October 30, 1930, until the next Monday morning, he left the tea kettle on the stove unfilled. When he arrived at the school building on the folowing Monday morning, it was on the floor not far from the oil can that had been filled with floor oil by Cheaney. On picking it up he testified that he discovered it was filled with something which he assumed was water and he placed it on top of the stove. He then built the fire, and just after it got going well the contents of the kettle became ignited; whereupon wit-

ness picked it up and endeavored to carry it out of the building but the flames from it burned his hands so badly that he dropped it on the floor, which ignited the building and destroyed it with the above-stated tragical consequences.

It was testified by the janitor of the church that the oil can was used by the church congregation as a container of kerosene for lighting purposes for both the church building and the school building. It was also shown that there was an attempted meeting of the church trustees at the school house on Saturday night before the tragical Monday morning, but all of the members present stated that they did nothing to the tea kettle, though they did ascertain that some one had filled the oil can with something that they concluded was kerosene, and some one remarked that he supposed the one who had pilfered a lamp from the church had concluded to compensate the congregation therefor and had donated the five gallons of kerosene. The janitor testified that on the previous Sunday night, October 26, 1930, he had filled some lamps from the kerosene can and had left therein what he supposed was about one gallon of its contents; but there was no evidence in the case that the same or any other amount of kerosene remained in the can until the following Friday when Cheaney delivered the floor oil.

It was charged in the petition that Cheaney poured the small amount of the contents of the oil can into the tea kettle in order to make room for his delivery of the floor oil and that he in no manner informed any one about it, and that in the exercise of ordinary care he should have anticipated the destructive result of his act that later happened. Furthermore, that such conduct on his part constituted such negligence as rendered his principal responsible for any proximate result thereof and which plaintiff averred included the fire that destroyed the life of its decedent. Defendant's demurrer to the petition was overruled and it answered denying all of the material averments therein. Upon trial the jury under the instructions submitted to it by the court, returned a verdict for defendant, and plaintiff's motion for a new trial having been overruled it prosecutes this appeal.

The motion and grounds for a new trial as amended contain ten alleged errors, each of which counsel insists

was of such substantial prejudice to the rights of the plaintiff as to authorize a reversal of the judgment; but in their brief filed in this court they appear to have abandoned all of them except what we shall classify as: (1) That the verdict is flagrantly against the evidence and not sustained by it; (2) rejection of competent evidence offered by plaintiff and the admission of incompetent evidence offered by defendant; and (3) error in giving and refusing instructions. The others contained in the motion for a new trial, we repeat, are not pressed in briefs; but, were it otherwise, we conclude that they are wholly immaterial and without merit and for which reason we will confine our discussion to the three we have enumerated, taking them up in the order named.

1. In disposing of ground (1) it should be remembered that Cheaney testified clearly and positively that he neither saw nor filled any tea kettle, in the school building when he delivered the floor oil, either with kerosene or any other substance, and that he saw and handled only one container in the school building, which was the oil can, and which was done in the manner and for the purpose hereinbefore stated. There was no evidence contradicting him upon those matters, other than the circumstances in the case, which established an opportunity for him to have put into the tea kettle the inflammable substance that it was later discovered it contained. If he told the truth, then the very foundation of plaintiff's cause of action, independently of any question of proximate cause, vanishes and disappears, since its charge of negligence rests exclusively upon the fact that defendant's servant, Cheaney, filled the tea kettle with its inflammable contents without notifying the teacher or any one connected with the school that he had done so. Whether or not that act of negligence, if true, would be the proximate cause of the fire, notwithstanding the intervening acts of the school teacher in placing the filled tea kettle on top of the stove under the circumstances and without examining its contents, is an entirely distinct question, and one which in itself rested upon the fact that Cheaney put the inflammable substance in the tea kettle. Besides his positive denial that he did so, there is the circumstance that there was a meeting at the school house between the dismissal of school on Thursday and its convening on the following Monday morning when the fire occurred, and those pres-

ent (but who denied having handled the tea kettle) nevertheless had an opportunity to have filled it the same as did Cheaney. Moreover, the teacher stated that when he left the school building on the previous Thursday evening he not only locked the door, but that he also fastened down the sash of the windows with spike nails. However, when Cheaney went there on the next day the front window that he entered was not so fastened, thereby indicating that if the teacher told the truth some one had been in the building after he left it on Thursday evening. It is useless for us to discuss other facts and circumstances in the case in order to demonstrate that the verdict of the jury was not flagrantly against the evidence and that this ground is not sustainable, since what we have stated is amply sufficient to uphold the verdict of the jury in its most probable conclusion that Cheaney put nothing into the tea kettle when he delivered the floor oil, and which, if true, we repeat, destroys the entire foundation and fabric of plaintiff's action.

2. It is argued in support of ground (2) that the court in admitting evidence of (a) the pilfering of some articles belonging to the church prior to the fire; (b) of refusing plaintiff's offer to introduce the written contract between defendant and the county board of education to furnish the latter floor oil at certain prices for the current scholastic year; (c) in sustaining objections to certain questions propounded by plaintiff's counsel to the witness Cheaney while he was on the stand; (d) of allowing a witness to testify from the records of defendant as to the route traveled by Cheaney on October 31st and November 1st of the year involved; (e) in allowing the witness Dr. Tanner to state that Cheaney after the fire (and who was being treated by the witness) made certain remarks about continuing his job with defendant; and (f) that the court erred in rejecting offered testimony by the school teacher as to how long his hands remained bandaged while he was confined at his home as a result of the fire. Some of the objections argued in brief support of this ground cannot be considered by us, even if there were merit in them, because there was no avowal as to what the witness would state and which is required by a mandatory rule of practice of such universal application as not to require the citation of cases in support of it.

Under subdivision (a) of this ground the testimony complained of was incidentally stated by the witness who gave it in explaining how the members of the church board at the Saturday meeting had accounted for the can being filled with something, and, manifestly, it was of such trifling significance as to not rise to the dignity of an error; much less a material one. It was developed by the making of a jocular remark by some one present at the meeting in an effort to account for the oil can being filled and the statement complained of could not possibly have any effect on any material issue in the case.

The written contract referred to in subdivision (b) of this ground was offered to be introduced by plaintiff; whereupon the defendant stated that it would agree that it had a contract with the county board of education to furnish to the various schools under its jurisdiction floor oil at agreed prices, and that it was in obedience to that contract that Cheaney made the delivery at the colored school house. That contract contained, among other things, this clause: "Prices named herein are for oils or greases in containers as specified. When oils are furnished in half barrels, drums or tins, our regular charge in addition to prices named will be added for containers unless otherwise specified." Plaintiff's counsel argue that their client was entitled to have the entire contract submitted to the jury and that the inserted clause obligated the defendant to furnish containers when the amount of the material required was less than a half barrel, and from whence they seek to deduce the conclusion that it was the duty of defendant to furnish the container in this case, and, not having done so, but appropriated instead the empty can that Cheaney found in the school building, was a violation of the contract for which defendant is liable. But, in making that argument learned counsel overlooked the fact that this is not a suit based on any violation of that contract. On the contrary, it is one based upon the alleged negligent act of putting inflammable material in the tea kettle in the school building and of which the subsequent fire was a proximate result. The only office or legitimate purpose of a reference to the contract between the county board of education and defendant was to show that defendant's servant went to the school house and made his delivery in fulfillment of that contract.

In other words, it furnished the basis for the reason to believe that the can was filled by defendant's servant, and not by some one else. But, even that evidence had no office in the case after Cheaney took the stand and admitted that he was the one who had done so. Whether the oils or other material with which that contract dealt were delivered at the school house and deposited in the proper container (which was the five-gallon tin can in this case) was not a material issue, since the occasion of Cheaney appropriating the can was no part of his alleged negligent act, but which was, as plaintiff alleged, his putting inflammable material into the tea kettle, under the circumstances and conditions, without giving notice thereof.

The matters complained of under subdivision (c) of this ground are based upon questions propounded to Cheaney growing out of a temporary mental affliction with which he was attacked some time after the fire. In the month of February, 1931, he developed nephritis, an infection of the kidney, and his blood became poisoned, and his mind became affected. Dr. Busby, who then was, or later became superintendent of the Hopkinsville asylum, was one of his physicians, as was also Dr. C. R. Tanner, and it was concluded that an inquisition be held upon him, which was done, and he was sent to the Hopkinsville asylum where he remained for awhile and was restored. Some of the questions involved in this subdivision related to his memory while in such condition. Likewise, he was interrogated concerning the salary that he received during that time, but which it appears was paid from, or principally from, an accumulated fund that had been provided for that purpose by the employees of defendant to take care of them during affliction. We are unable to see how any of the matters involved in this subdivision could throw any light upon any issue in this case, even if an avowal had been made, which in most instances was not done.

The only purpose of the evidence objected to in subdivision (d) of this ground was to substantiate the day that Cheaney visited the school house to deliver the floor oil; but it was only slightly, if at all, material as to whether that was on Friday or Saturday, except that decedent's father and another witness testified that they saw defendant's oil truck backed up to the school house from the road on Saturday, and from which the infer-

ence was sought to be drawn that the delivery was made on that day. We think the testimony complained of was to all intents and purposes immaterial the one way or the other; but certainly the error, if one, could have no prejudicial effect upon plaintiff's rights.

The testimony complained of in subdivision (e) of this ground was a statement by the witness, Dr. Tanner, concerning Cheaney's expressions of anxiety over retaining his job after his recovery from his affliction, to which we have referred, the materiality of which is of no greater potency than any of the testimony introduced or rejected that we have hereinbefore discussed, and for which reason we do not regard it of prejudicial effect.

The alleged pertinency of the testimony involved in subdivision (f) of this ground grows out of the fact that defendant proved certain contradictory statements made by the teacher some few days following the fire, and he not only denied making them, but endeavored to establish an alibi by showing that he was elsewhere; whereupon the extent of the effects of the burns upon his hands was offered to be proved by plaintiff, when defendant's counsel objected thereto and the court sustained the objection, stating at the time that the witness had already said that he was not at the place where the witnesses contradicting him had placed him, and also denied that he made any such statements, and that he (the court) thought the testimony irrelevant. There was no avowal made as to what the witness would state, and for which reason alone, waiving the question of its immateriality, the objection cannot be considered by us. We, therefore, conclude that none of the objections relating to the introduction or rejection of testimony are well taken and for which reason they are disallowed.

3. Ground (3), relating to the given and refusing instructions, presents, as we conclude, the only question involved in the case furnishing any room for dispute, or approaching toward materiality, but concerning which we are convinced learned counsel are mistaken in their insistence that the trial court erred in the particulars argued in their brief. The court gave to the jury instruction No. 1, saying "If you shall believe from the evidence in this case that the agent or servant of the defendant, Standard Oil Company, while acting within

the scope of his authority under his employment to the said defendant, did put kerosene, or some other danger-ous and inflammable or explosive liquid in the iron tea kettle mentioned in the evidence, under such conditions and circumstances as would lead an ordinarily careful and prudent person under the same or similar condi-tions or circumstances, to reasonably anticipate that injury would result to some person therefrom; and that, as a direct and proximate result thereof, the plaintiff's decedent was caused to and did receive burns from which he did die, you will find your verdict for the plaintiff and award to it damages in accordance with Instruction No. 2. But unless you believe as above re-quired, you will find for the defendant.''

Plaintiff objected to that instruction and offered in lieu thereof instruction X in substantially the same lan-guage, but containing after the phrase ''and award it damages in accordance with Instruction No. Two'' this language: ''Even though you may believe from the evidence that the burns and death of said decedent as complained of were directly caused by the teacher in placing the tea kettle containing such liquid, if he did so, on the stove in said building.'' It will be observed that instruction No. 1 made defendant liable for the death of plaintiff's decedent if its servant, Cheaney, put the inflammable substance in the tea kettle, and that he did so ''under such conditions and circumstances as would lead an ordinarily careful and prudent person under the same or similar conditions or circumstances, to reasonably anticipate that injury would result to some person therefrom,'' and that as a direct and proxi-mate result thereof the decedent was burned and killed by the fire. The clause that plaintiff's counsel embodied in their offered instruction X, and which they insist should have been submitted to the jury, not only called specific attention to certain parts of the evidence, con-trary to the prevailing rule of practice in this jurisdic-tion, but it also, in effect, was a definition of what was the proximate cause of the fire consuming the building, or whether the fire was a proximate result of the alleged negligent act of defendant's servant. In either event it was sought, by the insertion of that clause, to tell the jury that the act of the school teacher in putting the tea kettle on the stove under the circumstances was not such an intervening cause of the fire as to relieve the

alleged negligent act of defendant's servant from being its proximate cause.

In the case of City of Louisville v. Hart's Adm'r, 143 Ky. 171, 136 S. W. 212, 217, 35 L. R. A. (N. S.) 207, the defendant and appellant therein offered an instruction defining "proximate cause," which the court declined to give and declined to define the term by any instruction given to the jury. It was strenuously argued by defendant's counsel on appeal to this court that such action on the part of the trial court was reversible error; but we held otherwise and disposed of it in this language: "Another error assigned is that the court should have defined 'proximate cause.' In our opinion a definition of 'proximate cause' would have confused rather than enlightened the jury." To the same effect is the text in 38 Cyc. 1687, sec. 15, wherein it is stated that it was not the duty of the court to define the word "proximately" or the words "proximate cause," and the cases of Theissen v. Belle Plaine, 81 Iowa, 118, 46 N. W. 854, Parkhill v. Brighton, 61 Iowa, 103, 15 N. W. 853, Burk v. Creamery Package Mfg. Co., 126 Iowa, 730, 102 N. W. 793, 106 Am. St. Rep. 377, and Miller v. Boone County, 95 Iowa, 5, 63 N. W. 352, are cited in support of that text.

Supporting the excerpt from the Hart Case, supra, to the effect that an instruction defining proximate cause would have confused rather than enlightened the jury, attention is called to the text in 50 C. J. 836, 837, in beginning the discussion of the phrase "proximate cause." It says: "An unsatisfactory phrase, difficult to define, although it has been variously and frequently defined; but, it is said, no general or authoritative definition has been evolved." Accepting that statement as true (and which is fortified by a number of cited cases in the notes thereto), it will at once be seen that an attempted definition of the phrase would have been of no service to the jury when at the same time "no general or authoritative definition (of it) has been evolved." However, the same text, as well as adjudicated cases from all courts, including this one, says that, "An act is the proximate cause of an event when in the natural order of things and the particular circumstances surrounding it, such an act would necessarily produce that event; but the practical construction placed upon the term by many of the courts is a cause from which a man of ordi-

nary experience and sagacity could foresee that the result might probably ensue.'' Among the many cases cited in substantiation of that text, i. e., that the term embraces all consequences that a reasonably prudent person might anticipate would result from the act, is the case of Cundiff v. City of Owensboro, 193 Ky. 168, 235 S. W. 15. Many other cases from this court are to the same effect but in some of them other controlling facts appear, but which are not necessary to refer to in this opinion, since the instruction of the court in this case made defendant's liability depend upon only two facts which were (x) that its agent put the inflammable matter into the tea kettle, and (y) that he did so ''under such conditions and circumstances as would lead an ordinarily careful and prudent person, under the same or other conditions and circumstances, to reasonably anticipate that injury would result to some person therefrom,'' and which renders the first wrongdoer liable for all subsequent consequences if it or they were to be reasonably anticipated, regardless of the nature and character of intervening, contributing acts by others.

Other domestic cases announcing the correct rule to be that one is responsible for the consequences of his negligent act, if to be reasonably anticipated, are: Sydnor v. Arnold, 122 Ky. 557, 92 S. W. 289, 28 Ky. Law Rep. 1250; Paducah Light & Power Co. v. Parkman's Adm'r, 156 Ky. 197, 160 S. W. 931, 52 L. R. A. (N. S.) 586; Nunan v. Bennett, 184 Ky. 591, 212 S. W. 570; Waas v. Ashland Day and Night Bank, 201 Ky. 469, 257 S. W. 29, 35 A. L. R. 1441; Riley v. Louisville & N. R. Co., 231 Ky. 564, 21 S. W. (2d) 990; Kentucky Independent Oil Co. v. Schnitzler, 208 Ky. 507, 271 S. W. 570, 39 A. L. R. 979, and a number of others cited under Key Numbers 56, 58, and 59 of Vol. 14 of West's Kentucky Digest under the subject of ''Negligence.'' Also, still others found in volumes 3 and 6 of Caldwell's Ky. Judicial Dictionary, under the title of ''Proximate Cause.''

We shall not attempt a more elaborate definition of that phrase in this case, further than to give our approval to the partial one that the court submitted in its criticized instruction No. 1 given to the jury as embodying the law applicable to the facts of this case. We, therefore, conclude that the court did not err in declining to insert in that instruction the excerpt supra

contained in instruction X offered by plaintiff's counsel and which, if it had been done by the court, would not only have called the attention of the jury to a particular fact in the case and thereby given undue prominence to it, but it would also have been at least a negative definition of "proximate cause" to the extent of peremptorily stating to the jury that the acts of the school teacher in putting the filled tea kettle on the stove, under the circumstances and conditions that he did on the fatal occasion, was not the cause of the subsequent fire, and would not relieve defendant of responsibility for the original alleged negligent act of its servant, provided what the teacher did was to be anticipated by him, although there was an entire absence of any evidence that Cheaney, even if he saw the tea kettle on the occasion he was at the school house, possessed any knowledge of the purpose for which it was used, it not being even shown that he was ever in that particular building on any former occasion either when the school was in session or not in session. It, therefore, follows that the court did not err in refusing to give instruction X offered by plaitniff's counsel, nor did it err in giving instruction No. 1 to the jury without the explanatory or defining clause contained in the offered one.

Under this ground complaint is also made that the court erred in refusing to give to the jury instruction Y offered by plaintiff's counsel. That instruction, in substance, said that it was negligence for defendant's servant to appropriate in any manner the five-gallon oil can that he found in the school building without previously obtaining permission from the school authorities, and that his doing so was the failure to exercise ordinary care and constituted negligence on his part. One trouble with that argument is, that no such negligence was charged in the petition; but if it had been then there is no testimony in the record to show that the putting of the floor oil into that can had anything to do with producing the fire that destroyed the school building with its tragic consequences. The latter was produced because of the inflammable substance in the tea kettle and not by anything that defendant's servant put into the oil can. It is therefore clear that the court properly refused to give to the jury instruction Y offered by plaintiff.

The jury in this case necessarily arrived at one of two conclusions, or perhaps both. They were and are: That defendant's agent did not put anything into the tea kettle, or if he did, he was not required, in the exercise of ordinary care, to anticipate that the teacher would put the filled tea kettle on top of the stove and build a fire in the latter, after finding it in that unusual condition and not at its accustomed place on the top of the stove. We think those issues were properly submitted to the jury and that the evidence is sufficient to support its verdict finding defendant not answerable for the untimely death of plaintiff's decedent.

Wherefore the judgment is affirmed.