Edgar J. Nathan, Jr., J.
This is a novel and extraordinary complaint seeking damages for wrongful death of plaintiff’s testator who committed suicide. Three causes of action are pleaded. The first alleges that the suicide was brought about by extreme apprehension and severe emotional distress intentionally caused by the wrongful and malicious conduct of defendants. The second cause is solely for conversion of property. The third alleges an irresistible impulse induced by defendants’ intentional conversion causing death. Defendants move for dismissal of each of the three causes for insufficiency.
It is with respect to the sufficiency of the first and third causes of action that serious questions are presented. The second cause of action for conversion is clearly sufficient.
The complaint sets forth at great length the usage and custom in the rough- and polished-diamond business. In accordance with this usage and custom, the deceased, a diamond broker, took possession of a diamond from a wholesaler upon informal written consignment with the understanding that the stone thus *146 received, or the stated Value thereof, was to be returned upon demand. The deceased, also in accordance with this usage and custom, in turn delivered the stone to the defendants, diamond dealers, upon the same conditions, in order that they might find a prospective purchaser.
The first cause of action alleges that after the stated delivery was made to the defendants in September, 1955 the defendants, with full knowledge of the lack of title in deceased and also with full knowledge of the custom, announced to the deceased that they did not intend to purchase the diamond; that they did not intend to return the diamond to the deceased; and that they would deny having received possession thereof. It further alleges that defendants maliciously, without justification and with intent to cause injury to deceased and to his reputation refused to return the diamond, and that the failure to return the diamond to the deceased was with knowledge and notice that such failure would blacken the reputation of the deceased and destroy his ability to earn his livelihood. Finally, it alleges that these acts caused the deceased extreme apprehension and emotional distress with respect to his failure to return the diamond to its owner; and that by reason of such extreme apprehension and emotional distress, the deceased took his own life on October 6, 1955.
In the third cause of action, plaintiff alleges that the malicious and intentional conversion induced in. deceased an irresistible impulse to take his own life and that deceased was impelled by that irresistible impulse to end his life and did so on October 6, 1955.
Defendants urge that neither of the alleged wrongs is cognizable as a basis for an action under section 130 of the Decedent Estate Law, and that, in any event, suicide is an independent, intervening cause as matter of law.
Under section 130 of the Decedent Estate Law plaintiff herein may maintain an action ‘ ‘ to recover damages for a wrongful act, neglect or default,” causing the decedent’s death, if such action might have been maintained by the deceased had death not ensued. “ ‘ [T]he condition, that the action could have been maintained by the deceased if death had not ensued, has reference, not to the nature of the loss or injury sustained, but to the circumstances under which the bodily injury arose, and the nature of the wrongful act, neglect, or default complained of ’ ” (Greco v. Kresge Co., 277 N. Y. 26, 33, quoting from Pym v. Great Northern Ry. Co., 2 B. & S. 759). The “ wrongful act ” referred to need not be based upon negligence *147 (see Sullivan v. Dunham, 161 N. Y. 290). The statute applies to any wrongful death, whether predicated upon facts which constitute negligence, or any other wrongful act (Werra v. Cassedy, 229 App. Div. 590). While the wrongs here alleged as a basis for suit under the statute do not include a direct physical injury to the person, they are both torts alleged to be willfully and intentionally inflicted. The nature of these wrongs is sufficient within the meaning of the statute if the deceased could have maintained actions thereon had death not ensued.
The first cause of action purports to allege a “ prima facie ” tort. There is now ample authority in this State that the intentional infliction of injury or damage upon another may form the basis of an action in tort (Opera on Tour v. Weber, 285 N. Y. 348, 355; Advance Music Corp. v. American Tobacco Co., 296 N. Y. 79). However, plaintiff’s intestate could not have maintained such an action prior to death for the reason the allegations of this first cause of action are based upon the unlawful and tortious act of conversion. Where plaintiff has a remedy in one of the traditional torts, wherein he may recover for all damages sustained, whether general or special, “ prima facie tort ” does not lie (Ruza v. Ruza, 286 App. Div. 767).
Ordinarily, in the absence of a malicious intent, there could be no recovery in damages for mental anguish, humiliation or emotional distress caused by a conversion (89 C. J. S., Trover & Conversion, § 177). However “ [f]reedom from mental disturbance is now a protected interest in this State ” (Ferrara v. Galluchio, 5 N Y 2d 16, 21). Where the defendant’s act is intentional, recovery has been allowed for emotional distress and physical harm resulting therefrom, even in the absence of direct physical injury (see Garrison v. Sun Print. Pub. Assn., 207 N. Y. 1; Beck v. Libraro, 220 App. Div. 547). Under these authorities, it appears that special damages should also be allowed for mental suffering resulting from a malicious and willful conversion. The first cause of action in prima facie tort is therefore insufficient, for it could not have been maintained had the deceased lived. The deceased had a cause of action in the traditional tort of conversion wherein he could recover all of his damages. Moreover, this cause is further deficient for the additional reasons hereafter discussed. The first cause of action must therefore be dismissed.
With respect to the third cause of action, there are additional considerations. It is axiomatic that even an intentional wrongdoer is only responsible for the injuries he has directly caused. This is equally true in order to sustain an action under section *148 130 of the Decedent Estate Law. The wrongful act, neglect or default must have been the proximate cause of the death (Shapiro v. Tchernowitz, 3 Misc 2d 617).
Whether ah action for wrongful death will lie where as a result of an intentional wrongful act a person becomes insane, and in response to uncontrollable impulse commits suicide, is an issue that has not yet been decided in this State (Koch v. Fox, 71 App. Div. 288; see, also, McMahon v. City of New York, 141 N. Y. S. 2d 190). The overwhelming weight of authority is to the effect that a suicide — absent insanity — is a new and independent agency which breaks the causal connection between the wrongful act and death, precluding an action under the wrongful death statutes (Scheffer v. Railroad Co., 105 U. S. 249; Salsedo v. Palmer, 278 F. 92; Stevens v. Steadman, 140 Ga. 680; see, also, Ann. 11 A. L. R. 2d 751). These cases and others following them are based in part at least upon the conclusion that the voluntary, willful act of suicide is a new or independent agency which breaks the chain of causation. It has also been recognized, however, that where the suicide is committed in a state of insanity in response to an uncontrollable impulse, recovery may be had if the mental state of the deceased was caused by the defendant’s wrongful act (see Daniels v. New York, New Haven & Hartford R. R. Co., 183 Mass. 393; Elliott v. Stone Baking Co., 49 Ga. App. 515; Trumbaturi v. Katz & Besthoff, 180 La. 915; Eckerd’s, Inc. v. McGhee, 19 Tenn. App. 277). The court is of the opinion that this rule, which has been adopted by the Restatement and the text writers, is a more realistic approach to the problem and the one that should be adopted in this State (Restatement, Torts, § 455; Prosser, Torts [2d ed.], pp. 273, 274).
Defendant relies heavily upon the case of Salsedo v. Palmer (278 F. 92, supra) a Second Circuit decision interpreting the New York wrongful death statute. There, a divided court sustained a demurrer to the complaint stating that a death due to suicidal mania as a result of torture was neither the natural nor reasonable consequence of the wrong. The trend emerging from the cases in tort liability since that time as well as the advances in medical science and knowledge of mental illness compel the conclusion the dissent in that case should be followed here. It has been said that the law solves these problems pragmatically (Milks v. McIver, 264 N. Y. 267, 269). Upon this complaint the wrong is alleged to be intentional, and therefore the wrongdoer is responsible for the injuries directly caused even though they may be beyond the limits of foresee *149 ability. Where, as here, reliance is placed upon the willful and malicious intent to commit a wrongful act, the question of whether death by suicide could be the natural, proximate and legal consequence of the tort, is one for the jury. The court cannot say, as a matter of pleading and resolving every fair intendment in support of the pleader, that the full coverage of tort liability cannot embrace the facts and circumstances here involved. Ñor can it say that the result is too tenuous or speculative merely because of difficulty or improbability of proof. In so holding the court construes the allegations of irresistible impulse in the third cause of action as sufficient to constitute an allegation of insanity. Under the first cause of action, the allegation of mere emotional upset is insufficient even if that cause were otherwise sustainable.
Accordingly, the motion is granted to the extent of dismissing the first cause of action, and is otherwise denied.