MAGENHEIMER ET AL. *v.* STATE EX REL. DALTON,
ADMINISTRATRIX

[No. 17,931.   Filed March 13, 1950.]

*Glen W. Funk, James E. Rocap, John T. Rocap,* and *James E. Rocap, Jr.,* all of Indianapolis; and *Pell & Good* (of counsel), of Shelbyville, for appellants.

*Edward F. New, Leroy K. New,* both of Indianapolis, and *Harold Sochnick,* of Shelbyville, for appellee.

WILTROUT, J.—The relatrix' decedent died while a prisoner in the Marion county jail, after eating certain food served there. Appellee brought this action against the appellants, the then county sheriff and the surety on his bond. Among other things the complaint alleges:

"(a) That the defendant, Magenheimer, as such Sheriff, negligently provided unsanitary and unfit meat and drink for Future Dalton, a lawful prisoner in his custody.

"(b) That the defendant, Magenheimer, as such Sheriff, negligently failed to take proper care of Future Dalton in this to-wit: That a long and unreasonable delay was made in summoning a doctor to her side with the result that said Future Dalton died before any proper physician was called or notified."

Trial by jury resulted in a verdict in favor of appellee for $4,500, upon which judgment was entered. Appellants assign as error the overruling of their motion for a new trial.

There was evidence from which the jury could have found the facts hereinafter set forth.

Decedent, a 27 year old woman, was serving a thirty day sentence for petit larceny. There were matrons at the jail, under the supervision of the sheriff, who was their immediate superior, and who took orders from him.

Unsanitary and unfit meat, which was cooked by a deputy sheriff, was served to decedent and other prisoners on December 25, 1946. A matron was informed that the meat smelled "funny," but nevertheless directed that it be placed on the table. Decedent ate two helpings of the meat, while other prisoners ate little or none of it. Decedent became violently and dangerously ill within a few hours after eating the meat, which illness was obvious and apparent. After becoming partially unconsicous for a while she requested a matron to summon a doctor, and other prisoners persisted in requesting a doctor for decedent, which requests were refused. She screamed and groaned throughout the night and called for the matron to get her a doctor. Other prisoners who had eaten the meat became ill during the night. One who had not eaten with the others did not become ill. In the morning decedent was found dead.

There was evidence from which the jury could have found that death was due to gastro-enteritis caused by spoiled or impure meat, as well as evidence from which the jury could well have inferred that decedent's life might have been saved had she had timely and proper medical attention.

Appellants contend that negligence in failing to summon a doctor for decedent was not an issue in the case, and claim error with reference to certain instructions, based upon this contention. From a reading of the entire complaint, we are of the opinion that it sufficiently informed appellants that they were called upon to meet such a charge of negligence.

Appellant Magenheimer next claims that he is not liable by reason of any negligence, or any act or omissions of the prison matron; that the Act of 1901, ch. 132, p. 304; Burns' 1942 Replacement, §§ 13-1201 to 13-1207, placed female prisoners in the sole charge and care of the prison matron independently and exclusively of the sheriff and not as his deputy; that the Act of 1901 repealed the earlier act insofar as the sheriff's responsibility for female prisoners is concerned; that it is the duty of the matron to provide proper food and drink and not that of the sheriff; that no negligence or act of the matron can be imputed to him.

The court must ascertain the intention of the legislature, to the end that all of the statutes on the same subject may be construed together so as, if possible, to produce a harmonious system. *Dreves* v. *Oslo School Twp. of Elkhart* (1940), 217 Ind. 388, 28 N. E. 2d 252, 128 A. L. R. 1405; *C. I. & L. R. R. Co.* v. *Downey* (1937), 103 Ind. App. 672, 5 N. E. 2d 656.

Sections 49-2802 and 49-2804, Burns' 1933; 2 R. S. 1852, ch. 6, §§ 2 and 4, p. 10, provide that the sheriff shall "take care of the jail and the prisoners therein" and "may appoint deputies, and shall be responsible for their acts as such."

Section 13-1004, Burns' 1942 Replacement, 1 R. S. 1852, ch. 58, § 3, p. 345, provides: "The sheriff of the county, by himself or deputy, shall keep the jail, and shall be responsible for the manner in which the same

is kept. He shall keep separate rooms for the sexes, except where they are lawfully married, and he shall provide proper meat, drink and fuel for prisoners, if they have no other convenient way of supplying themselves." § 49-1325, Burns' 1933 (1949 Supp.) ; Acts 1935, ch. 73, § 3, p. 217, provides: "It shall be unlawful for any officer or person, without first having obtained the consent of the sheriff therefor, to take any food into any county jail for the use of any prisoner who is confined therein, except the food which is prepared and furnished by the sheriff having charge of such jail."

The above-cited Act of 1901 creates the office of prison matron in counties containing a population of 50,000 or more. It provides that the matron shall be appointed by the sheriff, and may be removed by him for good cause shown. "Such prison matron, when appointed, shall be a member of the sheriff's force in such county, and shall have all the authority now delegated to sheriffs and police officers in such counties . . ." It is her duty "to receive, take charge of, search, and properly care for, at the jail . . . all female prisoners . . ." "She shall be jailer in charge of the female department of the jail . . . with all the powers and duties of a member of the sheriff's or police force." "Such prison matron and her assistant or assistants shall be paid such compensation or salaries as other deputy sheriffs and police officers are paid for like work." All laws in conflict with this were repealed.

We are of the opinion that by the Act of 1901, the matrons did not become, in a sense, officers themselves or servants of the public, as distinguished from deputies of the sheriff, so as to relieve the sheriff from responsibility for their acts as such.

Appellants urge that there was no negligence in failing to call a physician for decedent, as the duty of

attending upon all prisoners confined in jail was that of the jail physician appointed by the board of county commissioners. The jail physician testified that he was "subject to call at any time," and that it "was up to the sheriff and his staff to call me." Appellants' contention is answered in the case of *Lamar* v. *The Board of Commissioners of Pike County* (1892), 4 Ind. App. 191, 195, 30 N. E. 912:

> "In the case before us it was the duty of Smith, the jailer in charge of the prisoner and acting for the sheriff, to summon a competent physician under the existing emergency to treat the prisoner, and thereby save his life, if such could be done. It would have been inexcusable neglect on the part of the jailer to have waited four hours to summon the secretary of the board of health, twelve miles distant, when the necessary medical aid could be obtained speedily and near at hand, and was essential to save the life of the prisoner."

Appellants next say that the statute making sheriffs responsible for the acts of their deputies as such is in derogation of the common law and must be construed strictly; that therefore liability is confined at most to acts in the nature of positive or aggressive wrongs. Appellants are in error as to the common law on this subject. The office of sheriff is one of the oldest known to the common law, and may have existed as early as the Roman occupation of England. *Coke Upon Littleton*, p. 168a. It is generally recognized that the liability imposed upon sheriffs by statute for the acts of their deputies is merely declaratory of the common law. 47 Am. Jur., Sheriffs, Police, and Constables, § 158, p. 932; 57 C. J., Sheriffs and Constables, § 194, p. 797; *Blackstone's Commentaries* (Gavit ed.), p. 143; *State* v. *Griffin* (1947), 80 Ohio App. 447, 76 N. E. 2d 294.

Appellants urge that there is no provision in the statutes or bond sued upon that makes the sheriff and his bondsman liable for a negligent tort committed on a stranger to the contract. As to this, we adopt the words of the Supreme Court in *State ex rel. Penrod* v. *French* (1944), 222 Ind. 145, 51 N. E. 2d 858: "The bond constituted a contract between him as an individual and the State for the benefit of any one who might suffer damage by reason of his failure to faithfully discharge his duties as sheriff."

Appellants also assert that decedent was guilty of contributory negligence, as a matter of law, in eating the food served to her when it had such a foul taste, smell and condition. The evidence shows that other prisoners ate of this food. Decedent's mother had called at the jail that morning to bring food to her daughter, but was not permitted to do so because of the jail rule that no food could be brought in. We cannot say that the evidence leads irresistibly to the conclusion that decedent was contributorily negligent. This was a question of fact for the jury.

There was sufficient evidence to sustain the verdict, and the court did not err in overruling appellants' motion for a directed verdict or in refusing appellants' instructions directing a verdict.

There was no error in refusing to give appellants' tendered instruction No. 7 inasmuch as the subject-matter thereof was properly covered by an instruction given. *Gerking* v. *Johnson* (1942), 220 Ind. 501, 44 N. E. 2d 90.

Neither do appellants present error in the refusal to give their tendered instruction No. 10. The only point urged is that "This instruction states the law correctly . . ." This is not sufficient to present any question concerning such refusal.

*City of Anderson* v. *Reed* (1928), 87 Ind. App. 379, 161 N. E. 829. We do find, however, that the subject-matter of this instruction was covered by other instructions which were given.

Appellee's instructions Nos. 1 and 2 instructed the jury that if it was found that a certain state of facts existed the jury would be warranted and it would ▮▮▮▮▮ be the jury's duty to find for appellee and against appellants. Both of these instructions omitted the element that decedent must have left surviving her next of kin who sustained pecuniary loss by reason of her death, and appellants objected to this omission. The omitted elements were not all undisputed, uncontroverted questions of fact. The sole element of damages sought to be recovered in this case was loss of support money, which it is alleged the deceased daughter would have continued to pay her mother. Appellee insists that the facts outlined in this instruction, if found by the jury, would have permitted a judgment for nominal damages, and therefore no essential element was omitted. It has been held in this state, however, that pecuniary loss is the foundation of the action and, "The damages are limited to the pecuniary loss suffered by those for whose benefit the action may be maintained." *Northern Indiana Power Company* v. *West, Admx.* (1941), 218 Ind. 321, 32 N. E. 2d 713. The law will not imply, in the absence of proof, that the parent of an adult child suffers pecuniary loss upon the death of the child. The rule where there is no implication of law that pecuniary injury was sustained is stated in *Wabash R. Co.* v. *Cregan, Adm.* (1899), 23 Ind. App. 1, 8, 54 N. E. 767: "In such case there can be no reason for holding the personal representative entitled to recover nominal damages." See also: *Pittsburgh, etc., R. Co.* v. *Reed* (1909), 44 Ind. App. 635, 88 N. E. 1080; *Hines, Di-*

rector v. *Nichols, Admr.* (1921), 76 Ind. App. 445, 130 N. E. 140; *Dillier* v. *Cleveland, etc., R. Co.* (1904), 34 Ind. App. 52, 72 N. E. 271.

These instructions differ from the instruction discussed in *Cleveland, etc., R. Co.* v. *Lutz, Admr.* (1917), 64 Ind. App. 663, 116 N. E. 429, where a similar element was omitted, and the omission was held not to be reversible error, as in that case the instruction was not mandatory, as are the instructions here.

These instructions being mandatory in form, it was necessary that all of the essentials to appellee's right to recover should have been included therein. The error cannot be rendered harmless by giving other instructions which state the law correctly. *Moorman Mfg. Co.* v. *Barker* (1942), 110 Ind. App. 648, 40 N. E. 2d 348; *City of Union City* v. *Fisher* (1930), 91 Ind. App. 672, 173 N. E. 330; *Indianapolis Traction, etc. Co.* v. *Mathews* (1912), 177 Ind. 88, 105, 97 N. E. 320.

Appellee's instruction No. 3, given by the court, instructed the jury that if it should be found that certain facts existed, including the fact that appellant Magenheimer "was guilty of one or more of the acts of negligence, if any, which was the or a proximate cause of the death" it would be their duty to find for appellee. Without setting forth the instruction in full, it is sufficient to say that it was not subject to the objection made that that part of the instruction dealing with contributory negligence was not sufficiently clear. More serious is the objection that it permits the jury to find against the appellants for any act of negligence, irrespective of whether such act is within the issues of the case. *Indianapolis, etc., Traction Co.* v. *Sherry* (1917), 65 Ind. App. 1, 116 N. E. 594; *Chesapeake & O. Ry.* v. *Boston* (1948), 118 Ind. App. 526, 75 N. E. 2d 194; *Emerson Brantingham Co.* v. *Growe* (1922),

191 Ind. 564, 133 N. E. 919. Appellee seeks to avoid this interpretation by a contention that the word "the" in connection with "acts of negligence," when considered with a later instruction, properly limited the jury to the acts of negligence in issue. Whether this mandatory instruction is so confusing and contradictory to other instructions as to constitute harmful error we need not decide in view of the result reached in this case and the probability that upon a retrial of this case the instruction will not again be offered.

To support their contention that the damages assessed by the jury are excessive, appellants claim error in the giving by the court of its instruction No. 31 as to the measure of damages, and in the refusal to give their instruction No. 12 on this subject. The substance of the objection to instruction No. 31 is that it is not complete. It is not mandatory, and appellants cannot predicate error on its lack of fullness without offering a proper instruction containing the elements desired. *Riechmann* v. *Reasner* (1943), 221 Ind. 628, 51 N. E. 2d 10.

Instruction No. 12 would have told the jury that they might consider certain things in determining the damages suffered. A number of these were proper subjects for consideration, and were not included in the instruction given by the court. Grave doubt exists, under the issues and evidence in this case as to whether the jury should have been permitted to consider decedent's "moral characteristics," as requested by appellants, a point which we need not decide in view of the result reached in this case.

Judgment reversed, with instruction to sustain appellants' motion for new trial.

Royse, J., not participating.

NOTE.—Reported in 90 N. E. 2d 813.