Betty Jean SAUDERS, Personal Representative of the Estate of Mark S. Sowles, Deceased, Appellant,

v.

The COUNTY OF STEUBEN; Lawnie M. McCelland, as Sheriff of Steuben County; Mark Klink and Gregory W. Aldrich, Appellees.

No. 92S03–9803–CV–146.

Supreme Court of Indiana.

March 6, 1998.

Shepard, C.J., filed dissenting opinion.

Kurt Bentley Grimm, Grimm & Grimm, P.C., Auburn, for Appellant.

Branch R. Lew, Brian L. England, Hunt, Suedhoff, Borror & Eilbacher, Fort Wayne, for Appellees.

## ON PETITION TO TRANSFER

BOEHM, Justice.

This case deals with the standard of liability of jailers for the suicide of a person in their custody. Plaintiff Betty Jean Sauders, personal representative of the estate of Mark S. Sowles, deceased, sued Steuben County, its Sheriff, and two officers in charge of the jail for wrongful death based on Sowles' suicide while a pretrial detainee in the Steuben County Jail. A jury held for the defendants and the Court of Appeals affirmed. *Sauders v. County of Steuben,* 664 N.E.2d 768 (Ind. Ct.App.1996). Because this action is covered by the Indiana Tort Claims Act, the Comparative Fault statute does not apply. In a nutshell, we hold that the decedent's act of suicide cannot be the basis for a finding of contributory negligence or incurred risk that would bar a plaintiff's claim for wrongful death of an inmate. To permit the suicide (or attempted suicide) to constitute a bar to recovery would eliminate altogether a claim for breach of a custodian's duty to take reasonable steps to protect an inmate from harm, self-inflicted or otherwise. Because the instructions in this case permitted such a result, we grant transfer and remand for a new trial consistent with this opinion.

We stated the facts in an earlier appeal in this case:

On April 28, 1986, an automobile driven by Sowles collided with the rear of a police patrol vehicle driven by an Angola city police officer. An Indiana state trooper investigated the accident and arrested Sowles. Tests showed his blood alcohol level to be .15 per cent. Because IND.CODE ANN. § 35–33–1–6 (West 1986) required Sowles to be incarcerated for at least four hours, he was transported to the Steuben County jail at approximately midnight, where he was processed by Aldrich, an employee of the Sheriffs Department, and placed alone in a two-person cell at 12:35 a.m. At 1:17 a.m., Sowles was found unconscious with a noose of blanket strips knotted around his neck. Despite resuscitation attempts and subsequent medical treatment, Sowles never regained consciousness. He remained in a permanent vegetative state until he died on July 13, 1988. Sauders filed suit alleging that the jail defendants had been negligent in their care and custody of the decedent....

*Sauders v. County of Steuben*, 582 N.E.2d 796, 798 (Ind.1991) (reported with *Tittle v. Mahan*).

Sauders raises three issues: (1) whether the trial court erred in instructing the jury on the defenses of contributory negligence and incurred risk; (2) whether the trial court erred in refusing to permit Sauders to refer to requirements of the Indiana Jail Standards; and (3) whether the trial court erred in instructing the jury that it could not consider the absence of audio-video monitoring equipment in the jail cell in determining defendants' liability.

## I. Contributory Negligence as a Defense

■ Whether or how the affirmative defenses of contributory negligence and incurred risk apply to an act of jail suicide is an issue of first impression in Indiana.[1] The

parties agree that because the County is a government entity, the action is covered by the Indiana Tort Claims Act, IND.CODE § 34–4–16.5–1 *et seq.* (1993), and exempted from the Indiana Comparative Fault Act, IND. CODE § 34–4–33–8 (1993). As a general proposition, under the Tort Claims Act, as at common law, both contributory negligence and incurred risk operate to bar a plaintiff's recovery against government actors. *Town of Highland v. Zerkel*, 659 N.E.2d 1113, 1120–21 (Ind.Ct.App.1995).

■ It is well settled that a custodian under some circumstances has a legal duty to take steps to protect persons in custody from harm. As the Court of Appeals noted, "[w]hen a party is in the custodial care of another ... the custodian has the duty to exercise reasonable care to preserve the life, health, and safety of the person in custody. The appropriate precautions will vary according to the facts and circumstances presented in each case." *Sauders*, 664 N.E.2d at 771 (citing *Cole v. Indiana Dep't of Correction*, 616 N.E.2d 44, 45–46 (Ind.Ct.App.1993)). However, the custodian does not have a duty to prevent a particular act (e.g. suicide). Rather, the duty is to take reasonable steps under the circumstances for the life, health, and safety of the detainee. *Cole*, 616 N.E.2d at 45–46. There is no inconsistency in these propositions. Although the dissent finds the net result to be a duty "to prevent self harm," it is not that. It is merely a duty to take reasonable steps. The custodian is not an insurer against harm. But neither are we willing to adopt the result of the trial court's instructions, which is that the custodian is immunized from liability for breach of duty to take reasonable steps, even if that breach causes the inmate's self harm.

1. The Court of Appeals cited *Magenheimer v. State ex rel. Dalton*, 120 Ind.App. 128, 90 N.E.2d 813 (1950), as a basis for its conclusion that contributory negligence was available to jailers. *Sauders*, 664 N.E.2d at 772. In *Magenheimer*, a prisoner died after eating extra helpings of foul smelling meat negligently served to her by the prison. Contributory negligence was available (but not successful) as an affirmative defense. But unlike a suicide case, the prisoner's conduct (eating despite awareness of rancid smell) was

not a necessary component of the alleged breach of the jailers' duty (serving rancid food) or resulting harm (death). Accordingly, recognition of this form of contributory negligence did not necessarily defeat the claim, as would recognition of suicide because the prisoner's action (self-inflicted injury) is necessarily a component of the harm to be avoided. In short, *Magenheimer* simply applied conventional contributory negligence doctrines in a jail setting. It is not a suicide case.

The Restatement (Second) of Torts formulates this duty as one to protect "against unreasonable risk" of harm, including specifically self inflicted harm. RESTATEMENT (SECOND) OF TORTS § 314A, cmt. d (1965).[2] The degree of notice that suicide is a risk is of course a critical factor in assessing the reasonableness of the steps taken. If the suicidal tendencies of the inmate are known, the standard of care required of the custodian is elevated. *Fowler v. Norways Sanitorium*, 112 Ind.App. 347, 42 N.E.2d 415 (1942); *Breese v. State*, 449 N.E.2d 1098 (Ind.Ct.App.1983). The condition of the inmate, the circumstances of the jail, and the extent of routine precautions are all relevant to an assessment of the need for additional steps. In short, the focus is on the defendant's conduct under the circumstances. The plaintiff's actions are relevant only insofar as they are a part of the circumstances of which the custodian is or should be aware, or they bear on whether any breach of defendant's duty is causally related to the injury.

Under the facts of this case, the jury might well have decided that the defendants breached no duty. There was testimony that Sauders was generally cooperative, able to walk and converse, and did not seem unusually depressed. The jury could have concluded that the jailers had no notice or reason to know of any suicidal tendency by Sauders. Sauders was booked at 12:35 a.m. and found hanging at 1:17 a.m.—a gap of forty-two minutes. According to one of the jailers, Sauders was checked at about 12:50 a.m.—twenty-seven minutes before the discovery. Whether a twenty-seven or forty-two minute lapse between checks of recently incarcerated and intoxicated inmates is or is not sufficient evidence of negligent conduct is for the jury to decide, irrespective of whether or not a suicide was attempted. A defense verdict on these facts was certainly possible.

However, under the instructions on contributory negligence and incurred risk,[3] the jury could have based its result on one or both of these defenses based solely on the fact that the decedent killed himself. The instructions defined the two defenses in such a manner that the act of suicide could be construed as meeting those definitions. The jury was also instructed that if it found that the act of suicide met the requirements of either defense, then Sauders could not recover. If the act of suicide (or attempted suicide) is a defense to a claim for failure to take reasonable steps to protect an inmate from harm, the cause of action evaporates in any instance of suicide or attempted suicide. This would completely obviate the custodian's legal duty to protect its detainees from that form of harm. We agree with the view of the Seventh Circuit in *Myers v. County of Lake, Ind.*, 30 F.3d 847, 853 (7th Cir.1994) that "a duty to prevent someone from acting in a particular way logically cannot be defeated by the very action sought to be avoided." Although we have no example to offer, we do not exclude the possibility that contributory negligence or incurred risk might constitute a defense if based on some act other than the suicide or attempted suicide. However, because the instructions in this case permitted the suicide itself to constitute the defense, a new trial is required.

The few courts in other states that have decided this issue have reached various conclusions. *Cole v. Multnomah County*, 39 Or.App. 211, 592 P.2d 221 (1979) rejected contributory negligence as a defense to an attempted jail suicide in reasoning very simi-

---

2. *See also id.* at cmt. e ("[t]he defendant is not liable where he neither knows nor should know of the unreasonable risk. . . ."). This does not mean that a defendant's lack of knowledge of an individual plaintiff's suicidal tendencies is always a complete bar to recovery. A defendant may have actual or imputed knowledge of unreasonable risk based on factors that do not include an evaluation of the particular plaintiff. But presence or absence of knowledge of increased risk as to a given inmate is certainly relevant to the extent of a defendant's duty.

3. The trial court defined contributory negligence and incurred risk in two separate instructions as follows: "Contributory negligence is the failure of a plaintiff to use reasonable care to avoid injury to himself, which failure is a proximate cause of the injuries for which he seeks to recover"; and, "[w]hen a person knows of a danger, understands the risk involved, and voluntarily exposes himself to such danger, that person is said to have 'incurred the risk' of injury." Each plainly permitted the jury to find the act of suicide itself to be sufficient to invoke the defense.

lar to ours, concluding that "the acts which plaintiff's mental illness allegedly caused him to commit were the very acts which defendants had a duty to prevent, and these same acts cannot, as a matter of law, constitute contributory negligence." *Id.* 592 P.2d at 223. Sauders does not allege Sowles' mental illness or other lack of capacity but this factor is unrelated to the analysis. Indeed, the Oregon court went on to note that even if the plaintiff was not mentally ill, contributory negligence would not save the defendants. Awareness of the inmate's mental illness, like notice of suicidal tendencies, may be relevant to the issue of the appropriate standard of care required of the defendants, but it does not bear on the "fault" of the plaintiff-decedent. Similarly, *DeMontiney v. Desert Manor Convalescent Ctr. Inc.,* 144 Ariz. 6, 695 P.2d 255 (1985) concerned a suicide in a private hospital. Based on the record in that case, the court held that upon notice of the likelihood of self-inflicted injury, the custodian had a duty to use reasonable care to prevent the harm. Occurrence of the harm itself did not release the hospital from liability as an intervening cause.

Two courts in common law comparative negligence jurisdictions, *Heflin v. Stewart County, Tennessee,* 1995 WL 614201 (Tenn. Ct.App. Oct.20, 1995), and *Hickey v. Zezulka,* 439 Mich. 408, 487 N.W.2d 106 (1992), have held that a jury instruction on comparative fault in jail suicide cases is sometimes appropriate, leaving it to the fact finder to apportion fault.[4] We are free to adopt comparative fault doctrines as a matter of the common law of this state, even in areas where the legislature did not apply the Comparative Fault Act. However, custodial suicide is not an area that lends itself to comparative fault analysis. As already noted, the conduct of importance in this tort is the custodian's and not the decedent's. Further, it is hard to conceive of assigning a percentage of fault to an act of suicide. The suicide

can be viewed as entirely responsible for the harm, or not relevant at all to an assessment of a custodian's breach of duty. A comparative balance of "fault" in a suicide case would seem to risk random "all or nothing" results based on a given jury's predilections.

Finally, *City of Belen v. Harrell,* 93 N.M. 601, 603 P.2d 711 (1979) and *Dezort v. Village of Hinsdale,* 35 Ill.App.3d 703, 342 N.E.2d 468 (1976) are two cases that reached a contrary result. In *City of Belen,* the court held, without analysis, that contributory negligence in a jail suicide case was for the jury to decide. Similarly, the *Dezort* court concluded that because contributory negligence was a defense under the Illinois Wrongful Death Act, it applied in a jail suicide case. Neither case deals with the reasoning set forth in this opinion, *Myers,* and *Cole,* and we do not find them persuasive.

 In sum, we conclude that the act of suicide cannot constitute contributory negligence or incurred risk in a custodial suicide case. Because the jury was instructed on contributory negligence and incurred risk in such a manner as to permit the suicide itself to bar the claims, a new trial is required. Although we remand on the first question presented, we take up Sauders' remaining contentions because they may arise in the retrial.

## II. Evidence of Jail Standards

Indiana Jail Standard 210 IAC 3–1–7(f) requires the audio-video monitoring of intoxicated pretrial detainees like Sowles. The jail did not have this equipment. On November 14, 1989, the trial court entered a partial summary judgment that was not appealed by Sauders. *Sauders,* 664 N.E.2d at 770–71. Paragraphs fifteen and sixteen of the 1989 judgment held that the County did not owe Sauders a duty to purchase monitoring equipment, and that consequently the County

---

4. The *Heflin* court supported a capacity-based standard for the comparative negligence instruction. If a decedent was unable to be responsible for his well being, e.g., because of mental illness, then comparative fault did not apply because the decedent could not have intended the harm.

The *Hickey* court was divided on the comparative negligence instruction. Three Justices distinguished between negligent and intentional conduct and said that the comparative negligence instruction should only be given for negligent acts, noting that "a jail suicide presents a situation where a defendant has a duty to give aid to and protect another person in the defendant's custody, even from his own intentional acts." *Hickey,* 487 N.W.2d at 121.

was immune from liability for policy-oriented decisions with respect to whether to allocate funds to purchase the equipment.[5] Later, after an appeal dealing with other issues,[6] the court granted the County's motion in limine based on the 1989 judgment. The order prohibited evidence on all issues resolved by the parties' summary judgment order, including, specifically, the purchase or installation of monitoring equipment by the County.

■ Despite these pretrial rulings, Sauders contends that the trial court erred in refusing to permit her to introduce evidence regarding Indiana Jail Standard 210 IAC 3–1–7(f) in order to rehabilitate her expert witness. At trial, Sauders' expert testified that in the absence of audio-video monitoring equipment, jailers should check detainees like Sowles every fifteen minutes. On cross-examination, when asked whether the Indiana Jail Standards required checks of intoxicated prisoners every fifteen minutes, the expert responded, "No." Sauders objected and requested that she be allowed relief from the motion in limine in order to show that the Indiana Jail Standards required audio-video monitoring, and for that reason did not prescribe more frequent visits. After lengthy discussion, the court concluded that Sauders could establish the context of her expert's conclusion that fifteen minute checks were desirable under the circumstances, by pointing out that one such circumstance was the absence of audio-video monitoring equipment.[7] Sauders agreed that the court's solution was "fair" but then did not raise the subject with her expert on redirect.

Sauders seems correct that it was appropriate to relax the motion in limine to allow her to introduce into evidence the Indiana Jail Standards' requirement of audio-video monitoring equipment. The County opened the door to references to the Standards' provision on monitoring equipment by relying on the absence of a fifteen minute requirement to challenge the credibility of the conclusion of Sauders' expert witness. But Sauders both accepted the trial court's solution as fair, and then chose not to revisit the subject with the expert. Thus she effectively waived the issue for purposes of this appeal.

### III. Instruction on the Relevance of Audio–Video Monitoring Equipment

■ Finally, Sauders alleges that the following jury instruction was too broad.

> I instruct you that none of the Defendants owed any duty to Mark Sowles to purchase or install audio-video monitoring equipment.... Absence of audio-video monitoring equipment ... at the Steuben County Jail shall not be considered by you in determining whether or not any of the Defendants are liable to Mark Sowles.

We agree. Sauders objected that the instruction was not an accurate statement of the law. The court responded that the instruction was based on the law of the case, as established by the 1989 judgment. *See supra* note 5 and accompanying text. However, rules that became the law of the case—no duty to purchase the monitoring equipment, and immunity for the decision not to purchase the equipment—are distinct from the question of what constitutes reasonable care under the circumstances, one of which was the known absence of the equipment. The jury should have been able to consider whether, without the equipment, the County should have been more vigilant in making personal checks on Sowles. As the court correctly concluded, there is no duty to provide the equipment and its absence is not evidence of negligence. However, its absence is one of the circumstances together

---

5. Parts of the 1989 judgment stated:
 15. The defendants, Steuben County Sheriff's Department, and its employees, owed Sowles no duty to purchase or install audio/video monitoring equipment....
 16. The defendants ... are immune from any liability for the policy-oriented decisions regarding the allocation of funds from the budget to purchase or install audio/video monitoring equipment....

6. In *Sauders v. Steuben County*, 582 N.E.2d 796 (Ind.1991) (reported with *Tittle v. Mahan*) we held that Steuben County was not immune from suit under Indiana Code § 34–4–16.5–3(7).

7. Earlier in the expert's testimony, the jury learned that the jail was not equipped with audio-video monitoring equipment.

with all others that are relevant to the issue of the defendant's conduct. The instruction that the absence of the equipment "shall not be considered" in determining the County's liability, went too far in precluding the jury from considering all relevant circumstances.

## Conclusion

Transfer is granted. The case is remanded for a new trial consistent with this opinion.

DICKSON, SULLIVAN· and SELBY, JJ., concur.

SHEPARD, C.J., dissents with separate opinion.

SHEPARD, Chief Justice, dissenting.

The central declaration of today's decision is that persons who attempt to do themselves harm while incarcerated never have any responsibility for their own actions.

The Court acknowledges that this declaration is both a matter of first impression for us and a matter of judicial choice. I think it is the wrong choice, one that will ineluctably shift liability away from those who suffer harm from their own intentional acts and impose it on those who are only negligent.

In speaking about the responsibility of custodians, the Court's opinion first states that "the custodian does not have a duty to prevent a particular act (e.g. suicide)." *Sauders v. County of Steuben*, 693 N.E.2d 16, 18 (Ind.1998). It then says that there is a duty "to take reasonable steps under the circumstances for the life, health, and safety of the detainee" and cites the Restatement (Second) of Torts for the proposition that the duty includes protecting against unreasonable risk

of harm, "including specifically self-harm." *Id.*

The foregoing statements in the Court's opinion have seemed inconsistent to me, but I take the bottom line to be that custodians have a specific duty to prevent self-harm and that their charges have no duty at all to care for themselves.

Tradition was that "the very commission of self-injury [was] regarded as the result of some abnormal condition of mind, but the extent of the abnormality and the competence of the actor remains a fact question in the determination of the degree of 'fault' of the actor." *Heflin v. Stewart County, Tennessee*, 1995 WL 614201, at *7 (Tenn.Ct.App. 1995). The New Jersey Supreme Court followed Professor Keeton's advice in taking a similar approach to the acts of mentally disturbed plaintiffs: "The modern trend appears to favor the use of a capacity-based standard for the contributory negligence of mentally disturbed patients." *Cowan v. Doering*, 111 N.J. 451, 545 A.2d 159, 163 (1988) (citing W. Page Keeton et. al., Prosser and Keeton on the Law of Torts § 32, at 178 & n. 39 (5th ed. 1984)).[1] Justice Boehm's approach conclusively assumes that all persons in detention are incapable of making legally relevant choices that lead to their harm.

The Tennessee and New Jersey courts were writing about responsibility for self-harm as it arises under comparative fault regimes. Our present case arises under traditional common law rules, but the Court's opinion makes clear that the same result would obtain if we were applying Indiana's comparative fault statute. *Sauders v. County of Steuben*, 693 N.E.2d 16, 20 (Ind.1998).[2]

---

1. The New Jersey court states: This standard recognizes that a mentally disturbed plaintiff is not capable of adhering to a reasonable person's standard of self-care, but at the same time holds the plaintiff responsible for the consequences of conduct that is unreasonable in light of the plaintiff's capacity. In effect, this rule permits the application of a flexible reduced standard of care; it does not eliminate contributory negligence. *Cowan v. Doering*, 111 N.J. 451, 545 A.2d 159, 163 (1988).

2. Our opinion reflects concern for the harshness of outcome under the common law when even a

little contributory negligence defeats a plaintiff's claim. *Sauders v. County of Steuben*, 693 N.E.2d 16, 19 (Ind.1998). Writing for a majority of the Michigan Supreme Court in directing that a contributory negligence instruction be given in a jail suicide case, Justice Dorothy Riley said, "I disagree [] that the other extreme should be adopted—that the [custodian] then assumes all responsibility and liability for injuries the plaintiff intentionally commits upon himself." *Hickey v. Zezulka*, 439 Mich. 408, 487 N.W.2d 106, 123 (1992).

There are thus a host of non-governmental custodians to whom today's rule will make a dramatic difference: hospitals, nursing homes, juvenile homes, psychiatric centers. These custodians presumably have at least the same duty of care as county jailors. If as the Court says, "the conduct of importance in this tort is the custodian's and not the decedent's", *id.*, these organizations will find themselves much closer to being insurers than they are now.