Clifford N. FAULK, Sr., Appellant–Plaintiff,

v.

NORTHWEST RADIOLOGISTS, P.C., and B. Richard Goldburg, M.D., Appellees–Defendants.

No. 49A04–9909–CV–409.

Court of Appeals of Indiana.

May 14, 2001.

Publication Ordered July 10, 2001.

David B. Hughes, Indianapolis, IN, Attorney for Appellant.

Steven J. Cohen, David Becsey, Zeigler Cohen & Koch, Indianapolis, IN, for B. Richard Goldburg, M.D.

Karl L. Mulvaney, Mary H. Watts, Candace L. Sage, Bingham Summers Welsh & Spilman, Indianapolis, IN, for Northwest Radiologists, P.C.

## OPINION

SHARPNACK, Chief Judge.

Clifford N. Faulk, Sr., appeals from the trial court's entry of judgment in favor of Northwest Radiologists, P.C. ("Northwest"), and B. Richard Goldburg, M.D. Faulk raises four issues, which we consolidate and restate as:

1) whether the trial court abused its discretion when it denied Faulk's motions for judgment on the evidence against Northwest and Dr. Goldburg on their defenses of contributory negligence; and

2) whether the trial court abused its discretion in the course of instructing the jury.

We affirm.[1]

The relevant facts follow. On February 27, 1991, Dr. Calvin Russell examined Faulk, who complained of a "mass" on the right side of his neck. Record, p. 645. Dr. Russell was concerned that the neck mass might be cancerous and referred Faulk to Dr. Goldberg, an otolaryngologist.[2] Dr. Goldburg examined Faulk on March 4, 1991, and during the course of the examination he felt a "hard mass" in the right base of Faulk's tongue in addition to observing the mass on Faulk's

---

1. Northwest argues, apparently as a cross-appeal issue, that there was sufficient evidence to support the judgment in its favor. However, because Faulk is not directly challenging the sufficiency of the evidence in regard to the final judgment, we do not address this issue.

2. An otolaryngologist specializes in diseases of the ears, nose, and throat and performs surgery on the head and neck. BLAKISTON'S GOULD MEDICAL DICTIONARY 967 (4th ed.1979).

neck. Record, p. 453. On March 8, 1991, Dr. Goldburg performed an esophagoscopy and laryngoscopy on Faulk, during which Dr. Goldburg obtained biopsies from Faulk's tongue and neck. Tests of the neck tissue indicated that it was cancerous, but the tongue tissue appeared not to be cancerous. Further tests failed to reveal the primary source for Faulk's cancer.

On April 24, 1991, Dr. Goldburg performed a right radical neck dissection on Faulk, in the course of which he removed twenty-eight lymph nodes from Faulk's neck. Before and after the surgery, Dr. Goldburg told Faulk that Faulk should return for check-ups

> "every month for the first (1st) year, every two (2) months the second (2nd) year, every three (3) months the third (3rd) year, every four (4) months the fourth (4th) year, twice during the fifth (5th) year, for the rest of my life I practice in their life, we see them ... once a year."

Record, p. 2310.

On May 13, 1991, Dr. Goldburg reexamined Faulk, referred him to Northwest for radiation therapy, and scheduled a follow-up appointment with Faulk for June 13, 1991. Despite receiving an appointment card reminding him of the June 13, 1991, follow-up appointment, Faulk missed that appointment. Faulk did not request another appointment with Dr. Goldburg and did not see Dr. Goldburg again for almost two years.

Meanwhile, on May 21, 1991, Dr. F.W. Peyton, a radiation oncologist who worked for Northwest, examined Faulk. Dr. Peyton determined that radiation therapy would be applied to Faulk's neck, but in the absence of evidence of a primary source for the cancer no radiation would be administered to Faulk's mouth. Faulk underwent radiation therapy from June 18, 1991 to August 2, 1991.

After completing the radiation therapy, Faulk returned to Northwest for several follow-up examinations over the course of the next year and a half. On each occasion Faulk was examined by one of Northwest's radiation oncologists, and on each occasion the oncologist found no evidence of recurring or new tumors in his mouth. Northwest's oncologists were aware that Dr. Goldburg had planned to see Faulk frequently for follow-up appointments and that Faulk had not returned to Dr. Goldburg. Three of the four oncologists who examined Faulk told him that he should see Dr. Goldburg in addition to seeing them.

Faulk missed two appointments with Northwest scheduled for March 30, 1993, and April 6, 1993. After being contacted by Northwest about the missed appointments, Faulk returned to Northwest for an examination on May 12, 1993. Although the oncologist who examined him concluded that Faulk remained free of cancer, Faulk complained of frequent severe headaches. Consequently, Northwest referred Faulk to a neurologist for evaluation. The neurologist ordered a CT scan of Faulk's sinus area, which revealed a soft tissue mass in the left side of Faulk's tongue.

Faulk returned to Northwest on June 15, 1993, and during the course of an examination Dr. Peyton concluded that although Faulk's mouth did not contain visual or palpable lesions, Faulk's tongue deviated to the left. Consequently, Northwest scheduled an appointment with Dr. Goldburg for Faulk. Dr. Goldburg examined Faulk on June 16, 1993, and detected by palpitation a mass in the base of Faulk's tongue. Subsequent biopsies of the tongue revealed the mass to be cancerous.

Dr. Goldburg sent Faulk to the Indiana University Medical Center, and on June

30, 1993, Dr. Raleigh Lingeman performed surgery on Faulk. In the course of the surgery, Dr. Lingeman performed a second radical neck dissection and removed Faulk's vocal cords and tongue.

Faulk filed a proposed complaint with the patient's compensation division of the Indiana Department of Insurance, asserting that Dr. Goldburg and Northwest had committed medical malpractice. A medical review panel concluded that the evidence did not establish that Dr. Goldburg or Northwest had failed to meet the appropriate standard of care in their treatment of Faulk. Subsequently, Faulk filed suit against Dr. Goldburg and Northwest. The case proceeded to a jury trial, and at the close of Dr. Goldburg and Northwest's presentations of evidence Faulk moved for judgment on the evidence against Dr. Goldburg and Northwest on their defenses of contributory negligence. The trial court denied both of the motions. Over Faulk's objection, the trial court instructed the jury on contributory negligence and incurred risk. The jury returned verdicts for Dr. Goldburg and Northwest.

## I.

■ The first issue is whether the trial court abused its discretion when it denied Faulk's motions for judgment on the evidence against Northwest and Dr. Goldburg on their defenses of contributory negligence. The purpose of a motion for judgment on the evidence is to test the sufficiency of the evidence. *Zemco Mfg., Inc. v. Pecoraro*, 703 N.E.2d 1064, 1071 (Ind.Ct.App.1998), *trans. denied.* The grant or denial of a motion for judgment on the evidence is within the broad discretion of the trial court and will be reversed only for an abuse of that discretion. *Id.*

■ Motions for judgment on the evidence are governed by Indiana Trial Rule 50, which provides, in relevant part:

> Where all or some of the issues in a case tried before a jury or an advisory jury are not supported by sufficient evidence or a verdict thereon is clearly erroneous as contrary to the evidence because the evidence is insufficient to support it, the court shall withdraw such issues from the jury and enter judgment thereon or shall enter judgment thereon notwithstanding a verdict.

Ind. Trial Rule 50.[3] When we review a trial court's ruling on a motion for judgment on the evidence, this court is bound by the same standard as the trial court. *Campbell v. El Dee Apartments*, 701 N.E.2d 616, 619 (Ind.Ct.App.1998). We may not substitute our judgment for that of the jury on questions of fact nor should a motion for judgment on the evidence be granted because the evidence preponderates in favor of the moving party. *Id.* Rather, we determine only: (a) whether there exists any reasonable evidence supporting the claim; and (b) if such evidence does exist, whether the inference supporting the claim can be drawn without undue speculation. *Id.* We consider the evidence in the light most favorable to the nonmoving parties. *Pecoraro*, 703 N.E.2d at 1071.

■ Here, Faulk asserts that the trial court abused its discretion when it denied his motions for judgment on the evidence because he contends that there is no evidence that he negligently contributed to the misdiagnosis of his cancer and the delay in treating it.[4] The general rule on

---

**3.** An amended version of Ind. Trial Rule 50 went into effect on January 1, 2001, but we are applying the version of Trial Rule 50 that was in effect during the trial.

**4.** Faulk also argues, in passing, that the trial court should have granted him judgment on the evidence on Dr. Goldburg and Northwest's defenses of incurred risk. However, when Faulk moved for judgment on the evi-

the issue of the plaintiff's contributory negligence is that the plaintiff must exercise that degree of care that an ordinary reasonable person would exercise in like or similar circumstances. *Memorial Hosp. of South Bend, Inc. v. Scott,* 261 Ind. 27, 37, 300 N.E.2d 50, 56 (Ind.1973). Contributory negligence is conduct on the part of the plaintiff, contributing as a legal cause to the harm the plaintiff has suffered, which falls below the standard to which the plaintiff is required to conform for his or her own protection. *Id.* at 37, 300 N.E.2d at 56. A patient's contributory negligence operates as a complete defense to medical negligence. *King v. Clark,* 709 N.E.2d 1043, 1046 (Ind.Ct.App.1999), *trans. denied.* Faulk raises challenges against Dr. Goldburg and Northwest's contributory negligence defenses, and we shall address each challenge in turn.

### A.

■ In regard to Dr. Goldburg, Faulk claims that he relied upon Northwest's oncologists to examine him during the two years that he did not see Dr. Goldburg, and that it was Dr. Goldburg's duty to see that Faulk came to his office for check-ups. As a result, he concludes that his behavior was reasonable. However, in light of evidence that Faulk unreasonably failed to follow Dr. Goldburg's instructions, we disagree.

Both prior to and after performing a radical neck dissection upon Faulk on April 24, 1991, Dr. Goldburg instructed Faulk that he should return for check-ups

> "every month for the first (1st) year, every two (2) months the second (2nd) year, every three (3) months the third

(3rd) year, every four (4) months the fourth (4th) year, twice during the fifth (5th) year, for the rest of my life I practice in their life, we see them ... once a year."

Record, p. 2310. In addition, Dr. Goldburg testified that he routinely explains to his patients why they need to return for check-ups, and that he has "[n]ever failed" to do so. Record, p. 2324. Dr. Goldburg scheduled Faulk for a follow-up appointment to be held on June 13, 1991, and gave Faulk an appointment card. Despite these instructions, Faulk missed the June 13 appointment, and Faulk did not see Dr. Goldburg again for almost two years.

■ After his radiation therapy ended on August 2, 1991, Faulk saw the oncologists at Northwest for regular examinations over the course of two years. On each occasion Faulk was examined by one of Northwest's radiation oncologists. Three of the four oncologists who examined him over the course of two years of examinations were aware that Faulk had not returned to Dr. Goldburg for follow-up examinations, and they told Faulk that he should see Dr. Goldburg in addition to seeing them. Nevertheless, Faulk never returned to Dr. Goldburg on his own initiative. Eventually, Northwest scheduled an appointment with Dr. Goldburg on Faulk's behalf on June 15, 1993. This evidence that Faulk ignored the instructions of Dr. Goldburg and Northwest's oncologists supports a conclusion that Faulk acted unreasonably. *See, e.g., Fall v. White,* 449 N.E.2d 628, 632–633 (Ind.Ct.App.1983) (holding that an instruction on contributory negligence was supported by sufficient evidence where the patient did not follow

---

dence at trial, he did not address incurred risk, only contributory negligence. Consequently, he did not raise this argument at trial and has waived it for appellate review. *See Mitchell v. Stevenson,* 677 N.E.2d 551, 558

(Ind.Ct.App.1997), *trans. denied.* Faulk did raise a timely objection to the trial court's final jury instructions on incurred risk, and we address his arguments on those instructions below.

his doctor's instructions to undergo tests and failed to give the doctor complete information), *reh'g denied.* Faulk's claims that Dr. Goldburg bore the burden of contacting him about missed appointments and that he reasonably relied upon Northwest's examinations are requests to reweigh the evidence, which we cannot do when reviewing a ruling upon a motion for judgment on the evidence. *See Pecoraro,* 703 N.E.2d at 1071.

■ Next, Faulk claims that even if he acted unreasonably, there is no evidence that his behavior was the proximate cause of his damages. Specifically, he points to the testimony of Dr. James Spahn, an expert who stated that if Faulk's tongue cancer had been detected in March 1991, Faulk's tongue and larynx would have been removed at that point in time. Faulk concludes from this testimony that his failure to return to Dr. Goldburg did not cause or exacerbate his damages. We disagree.

An expert witness for Northwest, Dr. Irene Gordon, testified that the tumor that was discovered under Faulk's tongue in 1993 was not present in 1991 when Dr. Goldburg examined Faulk and performed the neck dissection. Thus, it can be reasonably inferred that the tumor was not present in 1991, but developed sometime after Faulk stopped seeing Dr. Goldburg. In addition, one of Faulk's expert witnesses, Dr. William J. Powell, testified as follows with regard to Faulk's conduct and his tumor:

[Dr. Goldburg:] Was Dr. Goldburg's follow-up plan ... an appropriate follow-up plan for Mr. Faulk?

[Dr. Powell:] It was.

[Dr. Goldburg:] And, if Mr. Faulk had returned to see Dr. Goldburg in compliance with that follow-up plan, do you have any opinion as to whether or

not Mr. Faulk's cancer would have been diagnosed?

[Dr. Powell:] It's more probable than not that if he had followed that plan, the cancer would have been apparent.

[Dr. Goldburg:] And, it would have been diagnosed?

[Dr. Powell:] Yes.

Record, p. 2483.

Thus, it can also be reasonably inferred that Faulk's failure to follow-up with Dr. Goldburg delayed the diagnosis and treatment of his second tumor. *See, e.g., King,* 709 N.E.2d at 1048 (determining that there was sufficient evidence to support giving an instruction on contributory negligence where a patient's failure to follow the doctor's instructions could have caused her injury because she failed to report her symptoms to the doctor promptly and delayed obtaining tests that the doctor ordered, thereby delaying diagnosis and treatment of the cancer). Faulk's claim regarding Dr. Spahn's testimony is a request to reweigh the evidence, which we cannot do. *See Pecoraro,* 703 N.E.2d at 1071.

There was evidence from which it could be inferred that Faulk acted unreasonably with regard to Dr. Goldburg's instructions, and that Faulk's unreasonable behavior was a proximate cause of Faulk's injuries. *See, e.g., King,* 709 N.E.2d at 1048. Consequently, there was evidence that Faulk was contributorily negligent with regard to Dr. Goldburg, and as a result the trial court did not abuse its discretion when it denied his motion for judgment on the evidence against Dr. Goldburg's defense of contributory negligence.

**B.**

■ Turning to Faulk's motion for judgment on the evidence against Northwest's defense of contributory negligence,

Faulk once again claims that he acted reasonably because he was entitled to rely upon Northwest's oncologists' repeated examinations of him from August 1991 to December 1992 and their repeated findings that he was cancer free. However, as we. discussed above, over the course of his examinations at Northwest, Northwest's oncologists knew that Faulk was supposed to be seeing Dr. Goldburg, and ·three of the four oncologists admonished Faulk to return to Dr. Goldburg for check-ups. In light of Northwest's repeated instructions to return to Dr. Goldburg, Faulk was not entitled to rely solely upon Northwest's examinations and conclusions. Faulk's repeated refusal to obey Dr. Goldburg and Northwest's instructions is evidence that he acted unreasonably. *See, e.g., Fall,* 449 N.E.2d at 632–633.

■ Faulk also argues that even if there is evidence that he acted unreasonably, there is no evidence that his conduct, rather than that of Northwest, caused his damages. However, as we discussed above, there is evidence that the tumor that was discovered in 1993 was not present in 1991, and that if Faulk had maintained Dr. Goldburg's follow-up ·schedule, the tumor would have been diagnosed earlier. *See supra* Part I.A. Thus, there was evidence that Faulk's conduct was a proximate cause of the injuries that resulted from the second tumor. *See, e.g., King,* 709 N.E.2d at 1048. We conclude that there was sufficient evidence that Faulk was contributorily negligent, and the trial court did not abuse its discretion when it denied Faulk's motion for judgment on the evidence against Northwest's defense of contributory negligence.

## II. .

■ The second issue is whether the trial court abused its discretion in the course of instructing the jury. The deci-

sion to give a particular instruction rests with the trial court's sound discretion' and will be reviewed only for an abuse of that discretion. *King,* 709 N.E.2d at 1046. When determining whether error resulted from the giving of an instruction, we apply the following three prong test: 1) whether the tendered instruction correctly states the law; 2) whether there is evidence in the record to support giving the instruction; and 3) whether the substance of the instruction is covered by other instructions that are given. *Id.* In reviewing a claim that evidence was insufficient to support the giving of an instruction, the appellate court may look only to that evidence most favorable to the appellee and any reasonable inferences to be drawn therefrom. *Underly v. Advance Mach. Co.,* 605 N.E.2d 1186, 1191 (Ind.Ct.App.1993), *reh'g denied, trans. denied.* If there is any evidence to support the instruction, it was properly given. *Id.*

Here, Faulk challenges three of the trial court's final instructions, and we will address each in turn.

### A.

The first ·instruction at issue, final instruction twenty-seven, provides as follows:

The patient has a duty to exercise reasonable care in following a physician's instructions. If the physician has proved by a preponderance of the evidence each of the following:

(1) The plaintiff failed to follow the physician's reasonable instructions, which the physician gave concurrently with or prior to the alleged act of malpractice;

(2) A reasonably prudent person exercising reasonable care in the same or similar circumstances would have followed the physician's instructions;

(3) The plaintiff's failure to follow the physician's instructions proximately caused the plaintiff's injury;

then your verdict should be for the physician.

Record, p. 214.

Faulk argues that this instruction is unsupported by the evidence because even if his failure to return to Dr. Goldburg was unreasonable, it occurred after Dr. Goldburg and Northwest had negligently misdiagnosed his cancer and could not have been a proximate cause of his injuries.

As we discussed above, in order to constitute a bar to recovery, contributory negligence must be a proximate cause of the injury. *Smith v. Hull,* 659 N.E.2d 185, 192 (Ind.Ct.App.1995), *trans. denied.* The contributory negligence must be simultaneous with the fault of the defendant and enter into the creation of the cause of action. *See id.*

At trial, Faulk claimed that Dr. Goldburg was negligent in failing to diagnose his tongue cancer in 1991 and that Northwest was negligent in failing to provide radiation therapy to Faulk's mouth as well as his neck in 1991, which was before Faulk failed to return to Dr. Goldburg for follow-up appointments. However, Faulk also presented evidence that Dr. Goldburg was negligent by failing to follow-up with Faulk during the two years that Faulk did not return for appointments, and that Northwest was negligent by failing to order MRI scans, CT scans, and additional biopsies of Faulk's tongue during the same period of time. Thus, Faulk's unreasonable refusal to return to Dr. Goldburg was simultaneous with several of Dr. Goldburg and Northwest's alleged negligent acts, and because Faulk's conduct was united with several of the doctors' actions, the jury could properly conclude that Faulk's conduct contributed as a proximate cause to the harm that he suffered. *See King,* 709 N.E.2d at 1047. Thus, there is sufficient evidence to support the contributory negligence instruction, and the trial court did not abuse its discretion when it read the instruction to the jury.[5] *See id.*

### B.

The second instruction at issue, final instruction twenty-eight, provides as follows:

A person incurs the risk of injury if he knew of a danger, understood the risk involved, and voluntarily exposed himself to such danger.

In deciding whether the plaintiff incurred the risk, you may consider the experience and understanding of the plaintiff; whether the plaintiff had reasonable opportunity to abandon the course of action; and whether a reasonable person would have abandoned the course of action.

If you decide that plaintiff incurred the risk of some or all of the injuries

---

**5.** We distinguish *Harris,* a case cited by Faulk, from the instant case. *Harris v. Cacdac,* 512 N.E.2d 1138 (Ind.Ct.App.1987), *reh'g denied, trans. denied.* In *Harris,* a patient sued her doctor for performing unnecessary surgery. *Id.* at 1138. The doctor contended that the patient was contributorily negligent because she failed to perform certain neck exercises after the surgery. *Id.* at 1140. We determined that the trial court erred when it instructed the jury on contributory negligence because the patient's alleged negligence was "wholly subsequent" to the doctor's alleged negligence and therefore could not have contemporaneously contributed to her harm. *Id.* In the instant case, Faulk's alleged negligence (failing to return to Dr. Goldburg) occurred simultaneously with several of the alleged negligent acts of Dr. Goldburg (failing to contact Faulk for two years) and Northwest (failing to order additional tests for Faulk during two years of treatment). Thus, *Harris* is inapplicable here.

claimed, then the plaintiff's conduct is negligent.

Record, p. 215.

Faulk argues that there is insufficient evidence to support this incurred risk instruction because there is no evidence that he was aware of the risks of failing to return to Dr. Goldburg for two years. We disagree.

Incurred risk is an affirmative defense. *Town of Highland v. Zerkel*, 659 N.E.2d 1113, 1121 (Ind.Ct.App.1995), *trans. denied.* In determining whether a plaintiff incurred the risk of his or her injuries, a subjective analysis is required focusing on the plaintiff's actual knowledge and appreciation of the specific risk involved and the plaintiff's voluntary acceptance of that risk. *Id.*

In *Spirito v. Temple Corp.*, 466 N.E.2d 491, 492 (Ind.Ct.App.1984), *reh'g denied, trans. denied,* a patient at a medical care facility was injured when she fell off of a toilet, and the evidence indicated that she had been trying to get back into her wheelchair without help, even though a nurse had told her not to do so. The trial court instructed the jury on incurred risk, and the patient claimed that there was insufficient evidence to support giving the instruction. *Id.* at 493. We concluded that the evidence that the patient had been told not to try to get back in her wheelchair without help but had done so anyway was sufficient to support the trial court's instruction. *Id.*

In *King, supra,* a patient visited her doctor over the course of several years to treat fibrocystic disease in her breasts. *King*, 709 N.E.2d at 1044. At one point, the patient developed swelling and soreness in her left breast but delayed seeing her doctor for three to four weeks. *Id.* When she did see the doctor, he ordered her to undergo tests, but she delayed obtaining the tests for an additional five weeks. *Id.* at 1047. The patient then visited other doctors, who diagnosed her as having breast cancer, but she rejected their recommendations that she undergo a mastectomy and full chemotherapy course, opting instead to undergo a lumpectomy and a shortened course of chemotherapy. *Id.* The trial court instructed the jury on incurred risk, and we concluded that the patient's delay in seeking treatment and testing, as well as her choice not to undergo the recommended treatment, was sufficient evidence to support the trial court's decision to give the instruction. *Id.* at 1048.

Here, the record reflects that both before and after Dr. Goldburg performed the radical neck dissection on Faulk on April 24, 1991, he informed Faulk that Faulk should return for a series of regular and frequent check-ups over the course of several years. Dr. Goldburg routinely explains to his patients why they need to come in for follow-up appointments. He also said that Faulk never gave him any indication that Faulk did not understand his instructions. Nevertheless, Faulk missed his June 14, 1991, appointment with Dr. Goldburg and did not see him again for almost two years. Furthermore, Dr. Peyton, a radiation oncologist at Northwest, instructed Faulk and his family on numerous occasions to return to Dr. Goldburg for follow-up appointments, but "it was very obvious that they weren't going back." Record, p. 3271. Several other oncologists at Northwest also told Faulk to return to Dr. Goldburg for follow-up appointments, but Faulk did not do so. All of the above evidence indicates that Faulk was told to keep seeing Dr. Goldburg, was aware of why he needed to do so, and voluntarily chose not to do so, thereby incurring a risk that the detection of his second tumor would be delayed and

require serious treatment to remove it. This evidence is sufficient to support the trial court's decision to give the incurred risk instruction to the jury, and as a result the trial court did not abuse its discretion.[6] *See King*, 709 N.E.2d at 1048; *Spirito,* 466 N.E.2d at 492.

Nevertheless, Faulk once again argues that the incurred risk instruction is erroneous because "any risk incurred by a cancer patient like [Faulk] after the original malpractice could only, at most, reduce (not completely bar) his recovery." Appellant's Brief, p. 56. However, as we discussed above, at trial Faulk's claims of malpractice against Dr. Goldburg and Northwest included claims that both defendants acted negligently during the two years during which Faulk did not go back to Dr. Goldburg. *See supra* Part II.B. Thus, Faulk incurred the risk of his injuries simultaneously and in unity with Dr. Goldburg and Northwest's alleged negligence. *See King*, 709 N.E.2d at 1048. His claim that his actions occurred after the alleged malpractice is a request to reweigh the evidence, which we cannot do. There was sufficient evidence to support the jury instruction on incurred risk. *See id.*

## C.

The third instruction at issue, final instruction 29, provides:

A defendant has the burden of proving any claimed contributory negligence or any claimed incurred risk on the part of a plaintiff. Thus, a defendant has the burden of proving by a preponderance of the evidence any claimed negligence or any claimed incurred risk on the part of a defendant and that such negligence or incurred risk was a factor of the resultant damages claimed by the plaintiff against such defendant. If either defendant fails to prove either of these propositions, then plaintiff cannot be found contributorily negligent as to such defendant.

Record, p. 216.

Once again, Faulk's sole challenge to this instruction is that the evidence is insufficient to support this instruction. However, he presents no arguments against this instruction independent of his arguments against instructions twenty-seven and twenty-eight. We have already addressed those arguments above, and in

---

6. Northwest contends that this instruction is supported by evidence that Faulk was told to quit smoking, was told that if he did not quit smoking he was at risk for developing recurrent disease, and continued to smoke despite receiving that information, thereby incurring the risk that his smoking would cause a second tumor to develop. Faulk argues that this contention is without merit because the trial court specifically barred Northwest from presenting evidence or argument to the jury as to whether Faulk's smoking caused his cancer. Faulk has submitted a second supplemental record in support of his argument. We conclude, after reviewing the entire record, that pursuant to the trial court's order Northwest did not present any evidence showing that Faulk's smoking against his doctors' advice caused his second tumor. In the absence of such evidence, Faulk's continued smoking does not support the trial court's decision to read final instruction 28 to the jury. Nevertheless, as we discuss below, there is other evidence that supports the trial court's final instruction 28. Because of that other evidence, because no argument was made to the jury that Faulk's smoking caused his second tumor, and because no instruction from the court told the jury that Faulk's smoking could be considered a form of incurred risk, the lack of evidence of a causal link between Faulk's smoking and his cancer does not warrant a reversal based upon this instruction. *Cf. Sauders v. County of Steuben*, 693 N.E.2d 16, 20 (Ind.1998) (reversing a judgment where the trial court instructed the jury that an inmate's suicide could constitute incurred risk in an action against the custodians of the inmate for failure to exercise care to prevent his suicide).

the absence of additional arguments against this instruction we conclude that the evidence is sufficient to support this instruction as well. *See supra* Parts II.A. & II.B.

For the foregoing reasons we affirm the judgment of the trial court.

Affirmed.

MATHIAS, J., concurs.

SULLIVAN, J. concurs as to Parts I B, II B and II C and concurs in result as to Parts I A and II A.

#### ORDER

This Court having heretofore handed down its Memorandum Decision in this case on May 14, 2001.

The Appellant, by counsel, having thereafter filed his Petition for Rehearing and Request for Publication of said opinion and Appellee Northwest Radiologists, PC. having thereafter filed it brief in Opposition to the Petition for Rehearing, all in the following words and figures, to-wit:

#### (H.I.)

And the Court, having reviewed its opinion, having examined the Appellant's Petition for Rehearing and the Brief in Opposition thereto by the Appellee Northwest Radiologists. P.C., and being duly advised, now finds that the Appellant's Petition for Rehearing should be denied and that the appellant's Petition to Publish should be granted.

IT IS THEREFORE ORDERED as follows:

1. The Appellant's Petition for Rehearing is denied;

2. The Appellant's Petition to Publish is granted and this court's opinion heretofore handed down in this cause on May 14,

2001, marked Memorandum Decision, Not for Publication, is now ordered published.